986 F.2d 1422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dinah SOUZA, Plaintiff-Appellant,
v.
JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 92-5358.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1993.
 
 Before NATHANIEL R. JONES and SILER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Dinah Souza, appeals the district court's grant of summary judgment in favor of defendant, Jackson National Life Insurance Company (Jackson). The issue is whether the contestability period in the insurance policy runs from the date the decedent applied for the policy rather than the date the application was approved. For reasons stated herein, we AFFIRM the district court's determination that the contestability date runs from the date the application was approved. Tennessee law applies, as this case was filed under the diversity jurisdiction of the district court, 28 U.S.C. § 1332. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938).
 
 I.
 
 2
 Souza, Timothy Avans' first cousin, had urged Avans (the decedent) to take out a $100,000 life insurance policy. Souza promised to pay all the premiums if Avans agreed Souza would be the owner and beneficiary of the policy. Prior to Avans' meeting with the insurance agent, Byron Thompson, Souza had forwarded to Thompson a check in the amount of $100 as the initial premium payment. Avans applied to Jackson for the life insurance policy on December 23, 1987. In the application, Avans represented that he had never been treated for or had any indication of cancer, and that his weight had "stay[ed] around 156 [pounds] for last ten years." The application gave Avans the following choice:
 
 POLICY DATE SHALL BE:
 
 3
 ____ Effective date per Binding Receipt
 
 
 4
 ____ Date Issued
 
 
 5
 ____ To Save Insurance Age
 
 
 6
 ____ Other ____________
 
 
 7
 Avans selected the "Effective date per Binding Receipt" option.
 
 
 8
 The application contained the following language located immediately above one of the places where Avans signed:
 
 
 9
 It is represented that the statements and answers given in this application are true, complete, and correctly recorded to the best of my knowledge and belief. It is agreed that: ... (2) except as otherwise provided in the conditional receipt, if issued, with the same number as part one of this application, any policy issued on this application shall not take effect unless all of the following conditions are met: ... (c) the health of all persons to be covered by the policy remains as represented in this application.
 
 
 10
 I understand that no policy based on this application will be effective unless all of my statements and answers in this application continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.
 
 
 11
 Avans signed below this language.
 
 The application further stated:
 
 12
 I (we) represent that all statements and answers made in all parts of this application are full, complete and true to the best of my (our) knowledge and belief. It is agreed that: (a) All such statements and answers shall be the basis of any insurance issued.
 
 
 13
 I understand that my statements and answers in this application must continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the company in writing.
 
 
 14
 Avans signed below this language as well.
 
 
 15
 After Avans completed and signed both parts of the insurance application, Thompson provided him with a "temporary binder of insurance coverage" which provided full coverage until Jackson either issued or declined the policy.
 
 
 16
 The "temporary binder" was identical to a document entitled "interim insurance receipt." The "interim insurance receipt" included the following language:
 
 
 17
 Interim insurance shall terminate automatically, without notice, on the earliest of the following dates:
 
 
 18
 1. The date the company formally approves the policy(ies) applied for.
 
 
 19
 2. The date the company approves a policy other than applied for.
 
 
 20
 3. The date the company formally determines not to offer any policy.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 THIS RECEIPT IS NOT A BINDER. NEITHER THE AGENT NOR THE MEDICAL EXAMINER IS AUTHORIZED TO ACCEPT RISKS OR PASS UPON INSURABILITY, TO MAKE OR MODIFY CONTRACTS, OR TO WAIVE ANY OF THE COMPANY'S RIGHTS OR REQUIREMENTS.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 IF, IN ACCORDANCE WITH ITS ESTABLISHED UNDERWRITING REQUIREMENTS JACKSON NATIONAL LIFE WOULD DECLINE TO ISSUE A POLICY OR WOULD ISSUE A POLICY OR ISSUES A POLICY ON A BASIS OTHER THAN AS APPLIED FOR, JACKSON NATIONAL LIFE SHALL INCUR NO LIABILITY BASED ON THIS RECEIPT EXCEPT TO REFUND THE ABOVE SUM.
 
 
 27
 Thompson forwarded the $100 and the application to Jackson, which delivered a $100,000 life insurance policy to Avans on February 2, 1988, with a "policy date" of January 20, 1988, and an "issue date" of January 28, 1988. The monthly premium was $102, and the beneficiary was Avans' wife, Patricia. The first premium was due January 20, 1988.
 
 
 28
 The policy contained the following language:
 
 
 29
 After this policy has been in force during the lifetime of the Insured for two years from the issue date, it cannot be contested except for nonpayment of premiums.
 
 
 30
 On January 11, 1988, between the date of Avans' application and the delivery of the policy, Avans was admitted to a Chattanooga hospital and was diagnosed with chronic myelogenous leukemia. He was discharged on January 15, 1988. Contrary to Avans' representations in the policy application concerning his weight, the Discharge Summary stated that the "patient has about a forty pound weight loss over the past two years." Dr. Les Duddleston, who prepared the summary, stated that "the patient gave a fictitious name [Kelly Joe Vickers] on admission and after realizing the seriousness of his illness came forth with his real name, therefore laboratory and pathology results were listed under two different names." Avans failed to notify Jackson in writing of the diagnosis prior to the delivery of the policy.
 
 
 31
 On February 2, 1988, Avans and Souza signed and submitted to Jackson a change in ownership and beneficiary form naming Souza as the new beneficiary and owner of the policy.
 
 
 32
 Avans died of leukemia on December 31, 1989, more than two years after the date of his application for insurance, but less than two years from either the policy or issue date. Souza had paid all the premiums during Avans' lifetime, and claimed the $100,000 as the policy beneficiary. Jackson refused to pay Souza's claim, but refunded the policy premiums, which Souza has retained.
 
 
 33
 Jackson raised three affirmative defenses to Souza's claim: (1) Souza lacked an insurable interest in Avans' life; (2) Avans made a material misrepresentation in the policy application by claiming that his weight had "stay[ed] around 156 [pounds] for [the] last ten years"; and (3) Avans failed to disclose his January 15, 1988, cancer diagnosis in violation of the policy application terms. Souza moved for summary judgment, and Jackson argued it was entitled to summary judgment even though it did not formally move for such relief. The district court granted summary judgment in favor of Jackson because Avans failed to notify Jackson of the cancer diagnosis and thus breached not only the terms of the policy application, but also his duty under Tennessee law to notify Jackson of facts materially affecting the risk of loss. The court did not address either of Jackson's other two defenses. Later, Souza moved to alter or amend the judgment, asserting that the contestability period should be measured from the date of the application/interim receipt rather than from the issue date of the final policy, resulting in a bar to Jackson's defenses, as two years had passed since the application date. The court denied the motion.
 
 II.
 
 34
 This court reviews a grant of summary judgment de novo, making all reasonable inferences in favor of the nonmoving party. EEOC v. University of Detroit, 904 F.2d 331, 332 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Although Jackson never formally moved for summary judgment, nevertheless, "summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56 ... if the facts were fully developed at the summary judgment hearing so that the court of appeals can determine that the nonmoving party clearly was entitled to a judgment as a matter of law." Dickeson v. Quarberg, 844 F.2d 1435, 1444-45 n. 8 (10th Cir.1988) (citations omitted). The facts have been "fully developed," given the extensive discovery and stipulations made by the parties.
 
 III.
 
 35
 Souza argues that the two-year period for the policy to become incontestable began to run from the date of Avans' application, the date of the interim insurance receipt. Thus, as Avans had selected the "policy date" to be the "effective date per binding receipt," and more than two years elapsed between the date of the interim receipt and the date of Avans' death, the incontestability clause should bar Jackson's defenses to Souza's claims. The district court, however, found that the interim insurance receipt issued to Avans was not a "binder." Instead, the receipt established a separate, temporary insurance policy while the applied-for policy was being considered. As a result, the issuance of the interim receipt did not commence the two-year period to incontestability. We agree.
 
 
 36
 Souza relies on Holtze v. Equitable Life Assurance Soc., 548 F.2d 1037 (D.C.Cir.1976), and American Nat'l Ins. Co. v. Motta, 404 F.2d 167 (5th Cir.1968), to support the proposition that the date from which the contestability period began to run was the date of the interim receipt. In Motta, the court held that a life insurance policy was to be construed in favor of coverage because the conditional receipt issued was ambiguous as to when certain contestability and suicide clauses were to begin running. Id. at 167. The court held that to decide otherwise "would have the effect of establishing two insurance contracts. The first contract would not contain a suicide provision; the second contact would. Since neither party intended this two-contract arrangement," the court construed the several documents as creating one continuous contract. Id. at 169. In the current situation, however, the interim insurance contract explicitly created two separate policies: interim coverage which lasted only until the company formally approved or denied the application for permanent coverage, and permanent coverage. Thus, there was clear evidence of an intent to create two separate policies.[1] Moreover, there is no ambiguity here as in Motta, as the policy states that the contestability period will run "for two years from the issue date." The issue date is noted on the policy as January 28, 1988. In Holtze, the interim receipt stated that the insurance policy applied for would take effect and be in force from the date of that receipt. Id. at 1039. However, in the current situation, the interim receipt specifically stated that it was only creating a limited "interim insurance" policy which automatically terminated on the date that Jackson formally approved or denied the policy. Thus, it is not a "binder" which would make the policy retroactive to the date of application. Moreover, Jackson's receipt specifically stated that "THIS RECEIPT IS NOT A BINDER."
 
 
 37
 Souza argues that because Jackson gave Avans a choice of "policy dates," and Avans chose the "effective date per binding receipt," Jackson would be "fraudulent" and "unconscionable" unless it recognized the two-year contestability period as commencing on the date of the interim receipt. This argument, however, confuses the "policy date" with the "issue date." Avans was given a choice for the "policy date" but not for the "issue date." Jackson's policy makes it clear that the "policy date" is used to designate the due dates for premiums, whereas the "issue date" is used to indicate the running of the contestability period. Thus, Avans' selection of a "policy date" is irrelevant to the running of the contestability period, which is based upon the "issue date." As the "issue date" and the "policy date" have different purposes, Souza's argument is meritless. Each date is clearly established and no ambiguity exists. See Crowley v. Travelers Ins. Co., 196 F.2d 315, 316 (5th Cir.1952).
 
 
 38
 While the general rule is that the countdown to incontestability begins on the date of the issuance of a binding receipt in the absence of a specific contrary provision, see Nationwide Life Ins. Co. v. Ojha, 324 S.E.2d 292, 294 (N.C.App.), cert. denied, 333 S.E.2d 488 (N.C.1985), the interim receipt clearly stated that it was not a binding receipt which would be retroactive to the date of application. The final policy reinforced this interpretation by specifying the "issue date" as the date from which the contestability period ran. Thus, the contestability period should be determined from the issue date of the final policy, and not the date of the interim receipt. As Avans died less than two years after the issue date, Jackson was entitled to contest the coverage of the policy.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 Tennessee recognizes that temporary or interim insurance may come into being when an applicant for a policy pays a premium, if this is the intent of the parties. E.g., Tharp v. Woodmen of the World Life Ins. Soc., 768 S.W.2d 701, 702 (Tenn.App.1989)