**Judy WEBER, Plaintiff–Appellant,**

v.

**TRANSAMERICA OCCIDENTAL INSURANCE COMPANY, Defendant–Appellee.**

**No. 01–1968.**

United States Court of Appeals, Sixth Circuit.

July 1, 2003.

Before COLE and CLAY, Circuit Judges; and BERTELSMAN, District Judge.*

CLAY, Circuit Judge.

Plaintiff, Judy Weber, appeals from the district court's order granting summary judgment to Defendant, Transamerica Occidental Insurance Company, while denying Plaintiff's motion for summary judgment, in this diversity action in which Plaintiff sought to collect the proceeds from an insurance policy in the amount of $100,000 that her late brother, Wayne Gotts, obtained from Defendant. For the

---

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

reasons set forth below, we REVERSE the district court's order and REMAND with instructions that the district court enter summary judgment in favor of Plaintiff.

## BACKGROUND

In November of 1997, Gotts applied for a life insurance policy ("the Policy") from Defendant in the amount of $100,000. Gotts completed "Part 1" of the application on November 5, 1997, and tendered an initial premium payment of $66 to Defendant. In return, Gotts received a Conditional Receipt outlining the prerequisites that had to be met in order for the Policy to become effective. Gotts completed Part 2 of the of the application, consisting of a para-medical exam, on November 20, 1997. The Conditional Receipt provides that after meeting certain conditions, the "policy applied for shall be effective from the date of Part 1, the date of Part 2, or the date requested in the application, whichever is the latest, regardless of any change of insurability of each person to be covered occurring after completion of both parts of the application. . . ." (J.A. at 11.) Because Gotts did not request a date in the application, under the terms of the Conditional Receipt, coverage took effect on November 20, 1997.

Defendant issued the formal Policy to Gotts on December 17, 1997. The Policy contains a provision, "the Suicide Clause," which limited Defendant's liability in the event that Gotts' death was the result of suicide. Specifically, the Suicide Clause states: "Amount Payable is Limited in the Event of Suicide--If the insured dies by suicide, while sane or insane, within two years from the date of issue, we will be liable only for the amount of premiums paid." (J.A. at 28.) The Policy contains a "Definitions" section, but does not provide a definition for the term "date of issue."

On page one and page three of the Policy, however, the term "date of issue" appears with the date of December 17, 1997 appearing thereafter. The Policy expressly provides that the language of the Policy, the two-part application, and the Conditional Receipt together form Defendant's contract with Plaintiff.

Although Gotts had applied for coverage at a class of risk labeled "Preferred Non-smoker, Kind Code 6023," he was ultimately insured at a higher class of risk labeled "Standard Non–Smoker, Kind Code 6021." Defendant issued Gotts the Policy which insured him at a higher class of risk, and Gotts signed an Application Amendment on January 5, 1998, acknowledging this modification.

Gotts committed suicide on November 26, 1999. As the Policy beneficiary. Plaintiff requested that Defendant pay her the full $100,000 proceeds following Gotts' death. Defendant refused to pay Plaintiff the full value of the Policy, and instead tendered only the amount of premiums paid by Gotts, plus interest, for a total payment of $1,083.86. Defendant maintained that the Policy's "date of issue" was December 17, 1997, making Gotts' suicide on November 26, 1999 within the two-year limitations period, and therefore entitling Plaintiff only to the amount of premiums paid plus interest.

Plaintiff filed suit against Defendant arguing that Gotts' death by suicide occurred outside the two-year limitation period inasmuch as the Conditional Receipt made coverage effective on November 20, 1997. Plaintiff claimed that at best, the language of the insurance agreement was ambiguous because the agreement as a whole could be read as taking effect on the date provided in the Conditional Receipt, or the date provided twice in the Policy after the term "date of issue." Plaintiff concluded that as a result of this ambiguity, the language

had to be construed against the insurer thus requiring Defendant to pay Plaintiff the full value of the Policy.

Faced with cross-motions for summary judgment, the district court found that the date of issue to which the Suicide Clause referred unambiguously meant December 17, 1997, inasmuch as it was this date that appeared after the term "date of issue" as stated on pages one and three of the Policy. Thus, the district court granted Defendant's motion for summary judgment, and denied Plaintiff's motion for summary judgment. This timely appeal ensued.

## DISCUSSION

This Court reviews a district court's grant of summary judgment *de novo*. *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir.1998). Summary judgment is appropriate where the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this diversity case, we apply Michigan substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Michigan law, an insurance contract, like any contractual agreement between parties, should be read as a whole with meaning given to all of its terms. *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 434 (1992). An insurance contract is ambiguous, and therefore construed against the drafter in favor of coverage, if a "fair reading" of the entire contract as a whole " 'leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances.' " *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 596 N.W.2d 915, 919 (1999) (quoting *Raska v.*

*Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440, 441 (1982)).

Here, when considering the language of the Conditional Receipt along with the language of the Policy Suicide Clause, as the Court must do, an ambiguity exists because a fair reading of the provisions could lead one to understand that coverage existed on November 20, 1997 for purposes of death by suicide, but could also lead one to understand that coverage did not exist on November 20, 1997 for purposes of death by suicide. *See Nikkel*, 596 N.W.2d at 919. Moreover, to ignore the language of the Conditional Receipt violates Michigan law, because to conclude that coverage did not exist on November 20, 1997, is to render the language and purpose of the Conditional Receipt mere surplusage. *See Churchman*, 489 N.W.2d at 434 (instructing that an insurance contract should be read as a whole with meaning given to all of its terms).

If the term "date of issue" was defined in the Policy, the ambiguity would no longer exist inasmuch as a fair reading of the insurance agreement as a whole would lead to only one conclusion. In other words, if the term was defined, one would not be lead to understand that coverage existed on November 20, 1997 for death by suicide because the specific date upon which coverage took effect for such an event would be provided. It is true that under Michigan law, the fact that a term is not formally defined does not *ipso facto* render the term ambiguous, *see Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 596 N.W.2d 190, 194 (1999); however, because the lack of a specified definition for the term "date of issue" in this case leads to an understanding that coverage will be provided for death by suicide on one date, while at the same time leads to an understanding that coverage will not be provided on that same date, the

lack of a specified definition leads to a fatal ambiguity. *See Nikkel,* 596 N.W.2d at 919.

Thus, the reasoning and holding of *American National Insurance Co. v. Motta,* 404 F.2d 167, 168–69 (5th Cir.1968), should control the outcome here so as to allow for coverage of Gotts' death by suicide on November 26, 1999, inasmuch as the ambiguous policy must be construed as allowing for the two-year exclusionary period to begin on November 20, 1997 as provided in the Conditional Receipt. *See also LaTorre v. Conn. Mut. Life Ins. Co.,* 38 F.3d 538, 542–43 (11th Cir.1994) (following *Motta* to allow for coverage because of ambiguities between the terms in a conditional receipt and those in a formal policy). In *Motta,* the Fifth Circuit found a life insurance agreement to be ambiguous with respect to when the two-year limitations period of a suicide clause provision began to run in light of inconsistent provisions in the application, conditional receipt, and formal policy. *Id.* at 168. In a factual scenario similar to that in the matter at hand. Motta had applied for life insurance, paid his first monthly premium, and was issued a conditional receipt bearing an effective date of April 30, 1964. *Id.* Motta was then issued a formal policy bearing a "policy issue date" of June 9, 1964. *Id.* Motta committed suicide on May 9, 1966–within two years of the policy issue date, but outside two years of the conditional receipt effective date. *Id.* The plaintiff beneficiary sought the full value of the coverage, but the defendant insurance company refused to pay that amount on the basis that Motta's suicide death was within the limitation's period of the suicide clause. *Id.*

The plaintiff filed suit claiming that the inconsistent provisions of the application, conditional receipt, and formal policy rendered the insurance agreement ambiguous as a whole, thus requiring that the policy be construed in favor of coverage. *Id.* at 169. The district court agreed with the plaintiff and the Fifth Circuit affirmed. *Id.* The Fifth Circuit noted that the policy, application, and conditional receipt each made reference to one another which created an ambiguity as to which provision applied during the period between Motta's conditional receipt of coverage and his receipt of the formal policy. *Id.* at 168–69. As a result of the ambiguity, the Fifth Circuit found that the policy had to be construed against the defendant insurer requiring that the plaintiff be awarded the full value of the policy. *Id.*

Those cases which have rejected *Motta* are distinguishable from the this case. For example, *Crowley v. Travelers Insurance Co.,* 196 F.2d 315, 316 (5th Cir.1952) is distinguishable because both the application provisions as well as the policy provisions named the "issue date" as controlling, i.e., there was no ambiguity as to coverage date between provisions. Likewise, the same may be said for *Oakes v. Franklin Life Insurance Co.,* 516 F.Supp. 445, 446 (E.D.Pa.1981) *aff'd without opinion,* 676 F.2d 687 (3d Cir.1982), inasmuch there was no confusion that "all operative dates within the policy" were the same. Finally, *Souza v. Jackson National Life Insurance Co.,* No. 92–5358, 1993 WL 27423, at *4 (6th Cir. Feb.5, 1993), an unpublished decision from this circuit, is also distinguishable in that, unlike in this case, the interim receipt of insurance created a separate contract and therefore was not read together with the formal policy as one contract for purposes of discerning an ambiguity.

Having concluded that an ambiguity exists when reading Gotts' insurance agreement as a whole, Defendant's alternative argument must be considered. That is, Defendant claims that because Gotts never

satisfied the prerequisites of the Conditional Receipt, coverage did not take effect until Gotts actually received the formal Policy on December 17, 1997. Defendant argues that Gotts never satisfied Conditional Receipt's prerequisite that at the time of completing Parts 1 and 2 of the application, Gotts was insurable at "the class of risk applied for in Part 1 of the application[,]" because Gotts was issued a policy at a higher class of risk than that for which he applied. (J.A. at 11.) Defendant notes that Gotts applied for a "Preferred Nonsmoker" plan, but was issued a "Standard Nonsmoker" plan, and approved the change in the plan issued to him by signing the Application Amendment of January 5, 1998.

A complete reading of the section of the Conditional Receipt upon which Defendant relies illustrates that an ambiguity exists such that the language must be construed as allowing for coverage. Specifically, the portion of the Conditional Receipt immediately following the portion cited by Defendant states that "only after these conditions are met, the policy applied for shall be effective from the date of Part 1, the date of Part 2, or the date requested in the application, whichever is the latest, *regardless of any change of insurability of each person to be covered occurring after completion of both parts of the application . . . .*" (J.A. at 11 (emphasis added).) A fair reading of the latter portion of this provision could lead one to understand that so long as one appeared to meet the requirements of the risk for which one applied, a change in one's insurability at a later date would not preclude conditional coverage. To the extent that the latter part of this provision may be read to mean that a change in one's insurablity at a later date would preclude conditional coverage, an ambiguity is created such that the provision must be construed against Defendant. *See Nikkel,* 596 N.W.2d at 919.

Indeed, to conclude otherwise would render the Conditional Receipt itself a hollow provision inasmuch as an insured such as Gotts could pay the appropriate premiums, appear to comply with all of the prerequisites of the Conditional Receipt, and be provided the Conditional Receipt, only to learn months after the interim period had expired that he in fact had no coverage during that time. This result is not in conformity with Michigan's principle of insurance contract interpretation. *See Churchman,* 489 N.W.2d at 434; *see also Holtze v. Equitable Life Assurance Soc'y,* 548 F.2d 1037, 1042 (D.C.Cir.1976) (finding that the defendant insurer could not contest whether conditional coverage existed where the defendant had accepted the first annual premium and the period of contestability had expired).

Thus, when reading the provisions of Gotts' insurance agreement with Defendant as a whole, ambiguities exist which must be construed against Defendant and in favor of coverage such that Plaintiff is entitled to the full value of the policy.

## CONCLUSION

For the above-stated reasons, the district court's order granting summary judgment to Defendant is REVERSED, and the case is REMANDED with instructions that the district court enter summary judgment in favor of Plaintiff.