FARM BUREAU MUTUAL INSURANCE COMPANY
OF MICHIGAN v NIKKEL

Docket No. 111341. Argued April 7, 1999 (Calendar No. 16). Decided
July 20, 1999.

Farm Bureau Mutual Insurance Company of Michigan brought an
action in the Macomb Circuit Court against Steven Jacob Nikkel,
Steven John Nikkel, Blue Water Contracting, Inc., and others, seek-
ing a declaration that it was not obligated to provide coverage
under a no-fault policy in a wrongful death action arising out of an
automobile accident involving Steven Jacob Nikkel. Farm Bureau
insured Steven John Nikkel, father of Steven Jacob Nikkel, under a
family automobile policy and asserted that the vehicle involved in
the accident, which was owned by Blue Water and insured by Farm
Bureau under a commercial no-fault policy, was neither owned nor
nonowned under the terms of the family policy because it was fur-
nished for the regular use of either the named insured or any rela-
tive. The court, Peter J. Maceroni, J., granted summary disposition
for the defendants under MCR 2.116(C)(10), reasoning that the pol-
icy language was ambiguous. The Court of Appeals, WHITE, P.J., and
BANDSTRA and SMOLENSKI, JJ., affirmed in an unpublished opinion per
curiam (Docket No. 195936). Farm Bureau appeals.

In an opinion by Justice CORRIGAN, joined by Chief Justice
WEAVER, and Justices BRICKLEY, TAYLOR, and YOUNG, the Supreme
Court *held*:

The policy language at issue is unambiguous and enforceable.
Vehicles furnished for regular use of either the named insured or
any relative are not covered by the policy, unless a vehicle qualifies
as a temporary substitute vehicle.

1. The principles of construction governing contracts generally
apply to insurance policies. Where no ambiguity exists, the con-
tract will be enforced as written. An insurance contract is ambigu-
ous when its provisions are capable of conflicting interpretations.
If a fair reading of the entire contract leads to an understanding
that there is coverage under particular circumstances and another
fair reading leads to an understanding that there is no coverage
under the same circumstances the contract is ambiguous and
should be construed against its drafter and in favor of coverage.
Yet if a contract, however inartfully worded or clumsily arranged,

fairly admits of but one interpretation it may not be said to be ambiguous. The nonowned automobile clause at issue is clear and unambiguous. Ambiguity may not be discerned solely because an insured might interpret a term differently than the express definition provided in the contract.

2. An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy. To determine otherwise would hold an insurer liable for a risk it did not assume. The policy in this case clearly states that it covers losses sustained by the insured arising out of the ownership, maintenance, or use of an owned automobile or any nonowned automobile. It fairly admits of but one interpretation. It is neither ambiguous nor fatally unclear.

3. The rule of reasonable expectations of coverage has no applicability in this case because no ambiguity exists in the nonowned automobile clause and the insured could have discovered the clause on examination of the contract. The expectation that a contract will be enforceable other than according to its terms is not reasonable. To allow a person to bind another to an obligation not covered by the contract as written because the first person thought the other was bound to such an obligation is neither reasonable nor just. The nonowned automobile clause at issue unambiguously provides that an automobile furnished for the regular use of either the named insured or any relative is not a nonowned automobile for purposes of the policy. That a question of fact may exist regarding the applicability of the policy language to specific circumstances does not render the policy language ambiguous.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the insurer's method of exclusion by definition is invalid. Most policyholders would consider the term "nonowned" clear without definition. The plaintiff's practice, of defining this unambiguous term in an obscure manner, renders the clause unclear and ambiguous. Thus, these definitional exclusions do not fairly place an insured on notice of coverage limits. The insured should not be forced to piece together portions of the contract to determine whether coverage exists.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Anthony S. Kogut*), for the plaintiff-appellant.

*Lopatin, Miller, Freedman, Bluestone, Herskovic, Heilmann & Domol* (by *Richard E. Shaw*) and *Gur-*

*sten & Koltonow* (by *David E. Christensen*), for defendants-appellees.

CORRIGAN, J. We granted leave in this case to determine whether a nonowned automobile clause[1] of a no-fault insurance policy is ambiguous. We hold that the policy language at issue here is unambiguous and enforceable. In doing so, we repudiate the two-justice plurality opinion in *Powers v DAIIE*, 427 Mich 602; 398 NW2d 411 (1986), upon which the Court of Appeals relied. Under the clear language of the no-fault policy involved in this case, the policy does not cover vehicles furnished for regular use of either the named insured or any relative, unless the vehicle qualifies as a "temporary substitute vehicle." We therefore reverse the decision of the Court of Appeals and remand to the trial court to consider whether the nonowned automobile clause applies in this case.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

This case arises from an automobile accident resulting in two fatalities. A pickup truck driven by defendant Steven Jacob Nikkel and owned by defendant Blue Water Contracting, Inc., rear-ended a car occupied by Frances Cagle and Sherry Fitzgerald. The impact of the collision forced the Cagle car into oncoming traffic, resulting in a head-on collision. Cagle and Fitzgerald died from their injuries. The personal representatives of their estates later brought wrongful death actions.

---

[1] Although commonly referred to as an "owned automobile" or "owned vehicle" "exclusion," the clause is not an exclusion at all, but rather is a limitation on coverage by definition of a term used to specify the scope of coverage. Further, the relevant definition in this case is not that of "owned automobile," but "non-owned automobile."

At the time of the accident, sixteen-year-old Steven Jacob Nikkel, a newly licensed driver, resided with his parents. His father, defendant Steven John Nikkel, the president and sole shareholder of Blue Water Contracting, allowed Steven Jacob to use the Blue Water pickup truck. Plaintiff insured the pickup truck under a commercial no-fault policy issued to Blue Water, and tendered the full $500,000 limit on that policy in covering the accident. Plaintiff, however, also insured two automobiles owned by Steven Jacob's parents under a family automobile insurance policy. That policy is the subject of this declaratory action.

The family automobile insurance policy covers losses sustained by "the insured" arising out of the ownership, maintenance or use of the "owned automobile" or any "non-owned automobile." The policy defines the phrase "owned automobile" as follows:

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

(b) a trailer owned by the named insured.

(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and (2) the named insured notifies the company within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(d) a temporary substitute automobile. . . .

The policy further defines "non-owned automobile" as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile . . . ."

Plaintiff sought a declaratory ruling that it was not obligated to provide coverage in the wrongful death action because the truck was neither "owned" nor "non-owned" under the terms of the policy since it was "furnished for the regular use of either the named insured or any relative." The trial court granted summary disposition for defendants under MCR 2.116(C)(10). The trial court reasoned that the policy language is ambiguous and, thus, affords coverage whether the truck was furnished for the regular use of Steven John or Steven Jacob Nikkel. The Court of Appeals affirmed.[2] Although recognizing that it was not bound by *Powers, supra,* because only two justices had signed the plurality opinion,[3] the Court of Appeals reviewed the plurality opinion for guidance and held that the policy affords coverage in this case.[4]

---

[2] Unpublished opinion per curiam, issued December 30, 1997 (Docket No. 195936).

[3] In *Powers, supra* at 642, two justices concurred in the result only and another concluded that, while the exception is not invalid per se, it may be invalid as applied in a particular case. The partial dissent would have held that nonowned automobile clauses are valid and enforceable. *Id.* at 643. Accordingly, the *Powers* plurality opinion is not binding precedent. *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 115, n 7; 595 NW2d 832 (1999); *Dean v Chrysler Corp,* 434 Mich 655, 661, n 7; 455 NW2d 699 (1990).

[4] The Court of Appeals likewise relied on the *Powers* plurality opinion in *DeMaria v Auto Club Ins Ass'n (On Remand),* 165 Mich App 251; 418 NW2d 398 (1987). It has, however, declined to follow the plurality opinion on other occasions. See *State Farm Mut Automobile Ins Co v Koutz,* 189 Mich App 535; 473 NW2d 709 (1991); *VanDyke v League General Ins Co,* 184 Mich App 271; 457 NW2d 141 (1990).

We granted plaintiff's application for leave to appeal.[5]

## II. AMBIGUITY OF NO-FAULT POLICY LANGUAGE

The question presented is whether plaintiff's no-fault policy is ambiguous regarding coverage of losses incurred by an insured arising out of the use of a "non-owned automobile."[6] Because the limitation of residual liability coverage pursuant to a nonowned automobile clause is valid under the no-fault act,[7] the question is one of contract interpretation. See *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 68; 467 NW2d 17 (1991). Whether contract language is ambiguous is a question of law, which this Court reviews de novo. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996); *Cardinal Mooney High School v Michigan*

---

[5] 459 Mich 927 (1998).

[6] Under the definition of "insureds" provided in the policy, Steven Jacob Nikkel is an insured for purposes of "non-owned automobiles" because he is related to the named insured, Steven John Nikkel, by blood and resides in the same household.

[7] *State Farm Mut Automobile Ins Co v Ruuska*, 412 Mich 321, 343-347, 353; 314 NW2d 184 (1982) (opinion of LEVIN, J.) (opinion of COLEMAN, C.J.); see also *Husted v Auto-Owners Ins Co*, 459 Mich 500; 591 NW2d 642 (1999). The United States Court of Appeals for the Fifth Circuit explained the purpose of nonowned automobile clauses in *Benjamin v Plains Ins Co*, 650 F2d 98, 100 (CA 5, 1981):

It is well established that the purpose of this provision creating an exception to coverage of non-owned vehicles in automobile insurance policies is to make certain that the insured properly pays premiums on all of the vehicles which are regularly used and therefore are covered by the policy. The non-owned exception, as well as other exceptions involving replacement cars, rental cars, etc., are designed as a convenience to the insured to enable coverage in the case of occasional and sporadic use of such vehicles. To cover a non-owned vehicle regularly used by an insured would cause the insurance company to have to insure vehicles for which the insured did not pay insured [sic] premiums.

*High School Athletic Ass'n,* 437 Mich 75, 80; 467
NW2d 21 (1991).

A

In *Powers, supra,* this Court considered whether
substantially identical policy provisions defining the
phrase "non-owned automobile" were valid. The plu-
rality opinion would have held that

> the insurers' method of exclusion—by the definition of
> terms at variance with their common meaning, which most
> policyholders would consider clear without definition—ren-
> ders it invalid as (a) ambiguous, (b) not made clear, (c) a
> technical construction, and (d) contrary to the reasonable
> expectations of the insured reading the insurance contract.
> [*Id.* at 611.]

The plurality relied on six rules of contract inter-
pretation to conclude that the clauses were invalid:

> 1) "[E]xceptions in an insurance policy to the general lia-
> bility provided for are to be strictly construed against the
> insurer."
> 2) An insurer may not "escape liability by taking advan-
> tage of an ambiguity . . . ." " '[W]herever there are two
> constructions that can be placed upon the policy, the con-
> struction most favorable to the policyholder will be
> adopted.' "
> 3) An insurer must "so . . . draft the policy as to make
> clear the extent of nonliability under the exclusion clause."
> 4) An insurer may not "escape liability by taking advan-
> tage of . . . a forced construction of the language in a pol-
> icy . . . ." "[T]echnical constructions of policies of insur-
> ance are not favored . . . ."
> 5) "The courts have no patience with attempts by a paid
> insurer to escape liability by taking advantage of an ambigu-
> ity, a hidden meaning, or a forced construction of the lan-
> guage in a policy, when all question might have been
> avoided by a more generous or plainer use of words."

6) "[N]ot only ambiguous but deceptive." "[T]he policy-holder must be protected against confusing statements in policies . . . ." [*Id.* at 623-624 (citations omitted).]

The plurality emphasized the second, third, fourth and fifth rule in concluding that the clauses were invalid. The plurality reasoned that ambiguity existed because "owned automobile" and "nonowned automobile" were terms in common use that had unambiguous meanings that differed from the definitions provided in the policy. *Id.* at 624-627. It determined that the insurers' construction was a technical one, "requiring the application of an obscurely drafted definition to an apparently unambiguous meaning of a commonly used English word." *Id.* at 628. Further, the plurality explained, clarity required that the policy either specifically reference the definitions to alert the insured that they may differ from common meaning or include the "exclusions" in the exclusion section of the policy to provide notice to the insured. *Id.* at 627-630.

The plurality additionally relied on the related rule of reasonable expectations to conclude that the exception for nonowned automobiles was invalid. The plurality determined that a person reading the liability provisions of the policy would reasonably expect coverage when driving both the automobile insured under the policy and the cars of others. It reasoned that the policy did not identify the exception as an exclusion, but rather, exempted a group of automobiles by defining the terms in a manner contrary to their common usage. *Id.* at 631-633. The plurality would have held that "an insurer may not, by artful definition of terms at variance with their commonly understood meanings, and by failure to speak plainly

and clearly, effect an exclusion of coverage in an automobile liability policy." *Id.* at 634.

B

We repudiate the plurality opinion in *Powers, supra,*[8] and hold that the nonowned automobile clause of the policy involved in this case is unambiguous. The principles of construction governing other contracts apply to insurance policies. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 402; 531 NW2d 168 (1995). Where no ambiguity exists, this Court enforces the contract as written. *Morley v Automobile Club of Michigan,* 458 Mich 459, 465; 581 NW2d 237 (1998).

An insurance contract is ambiguous when its provisions are capable of conflicting interpretations. *Bianchi, supra* at 70. In *Raska v Farm Bureau Mut Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982), we explained:

> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
>
> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.
>
> Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

---

[8] Unlike the dissent, we do not view the passage of time since *Powers* as a significant factor that would weigh in favor of giving binding force to the *Powers* plurality opinion. Not surprisingly, the dissent identifies no authority for the proposition that insurers are obligated to modify policy language in response to an opinion that is not binding precedent and that the Court of Appeals has declined to follow. See *ante* at 562, ns 3, 4.

In this case, the policy defines the term "non-owned automobile" as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." "The overwhelming weight of authority supports the view that 'regular use' and other similar language limiting the extent of coverage provided through non-owned vehicle clauses is not ambiguous." *Foster v Johnstone*, 107 Idaho 61, 64; 685 P2d 802 (1984) (cases collected). See also *Nationwide Mut Ins Co v Shoemaker*, 965 F Supp 700, 703 (ED Pa, 1997), aff'd 149 F3d 1165 (CA 3, 1998); *Highlands Ins Co v Universal Underwriters Ins Co*, 92 Cal App 3d 171, 174-175; 154 Cal Rptr 683 (1979); *Allstate Ins Co v Humphrey*, 246 Md 492, 496; 229 A2d 70 (1967); *DiOrio v New Jersey Mfrs Ins Co*, 79 NJ 257, 267; 398 A2d 1274 (1979). We join the majority of courts that have considered this question in concluding that the nonowned automobile clause is clear and unambiguous. Accordingly, we accord this clearly defined term its stated meaning. *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992).

In so concluding, we decline defendants' invitation to discern ambiguity solely because an insured might interpret a term differently than the express definition provided in a contract. "This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Komraus Plumbing & Heating, Inc v Cadillac Sands Motel, Inc*, 387 Mich 285, 290; 195 NW2d 865 (1972). To the extent that the plurality in *Powers* gleaned ambiguity by relying on an understanding of a term that differed from the clear definition provided

in the policy, *Powers* is contrary to the most fundamental principle of contract interpretation—the court may not read ambiguity into a policy where none exists. *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 567; 519 NW2d 864 (1994).

Nor does the location of the clause in the definition section of the policy render it ambiguous. "An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161; 534 NW2d 502 (1995). "Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska, supra* at 361-362. To determine otherwise would hold an insurer liable for a risk it did not assume. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

We reject the *Powers* plurality's conclusion that placing the clause in the definition section of the policy is deceptive and confusing. In part I of the policy involved in this case, under the heading "Coverage," the policy clearly states that it covers losses sustained by the insured arising out of the ownership, maintenance or use of the "owned automobile" or any "non-owned automobile." The definitions of those terms are provided in the same part of the policy under the heading "Definitions: Under Part I." Although plaintiff could have arranged the policy differently, we conclude that it fairly admits of but one interpretation. Accordingly, it is neither ambiguous nor fatally unclear. *Raska, supra* at 362.

Finally, we conclude that the *Powers* plurality improperly relied on the rule of reasonable expectations to defeat the unambiguous policy language. In

*Vanguard Ins Co v Clarke*, 438 Mich 463, 472; 475 NW2d 48 (1991), this Court explained that, under the rule, it "will examine whether 'the policyholder, upon reading the contract language is led to a reasonable expectation of coverage.' " This Court also expounded on the factors involved in the determination:

> Factors courts consider in determining the legitimate existence of reasonable consumer expectation include "whether an insurance policy includes a provision that unambiguously limits or excludes coverage and . . . whether a policyholder could have sufficiently examined an insurance policy so as to discover a relevant clause which limits the coverage . . . ." [*Id.* at 472, n 7, quoting Keeton & Widiss, Insurance Law, p 636.]

Under *Vanguard*, the rule of reasonable expectations has no applicability here because no ambiguity exists in the nonowned automobile clause and the insured could have discovered the clause on examination of the contract.

In *Raska, supra,* this Court rejected an insured's attempt to rely on the rule of reasonable expectations and held that a nonowned automobile clause in a pre-no-fault insurance policy was valid and enforceable. This Court's remarks apply equally to the clause when included in a no-fault policy:

> [T]he expectation that a contract will be enforceable other than according to its terms surely may not be said to be reasonable. If a person signs a contract without reading all of it or without understanding it, under some circumstances that person can avoid its obligations on the theory that there was no contract at all for there was no meeting of the minds.
>
> But to allow such a person to bind another to an obligation not covered by the contract as written because the first person thought the other was bound to such an obligation is neither reasonable nor just. [*Id.* at 362-363.]

As we observed in *Raska,* application of the reasonable expectations rule under these circumstances is contrary to the fundamental principle that the insurer and insured may generally contract regarding the scope of coverage. See *Heniser, supra* at 161. Accordingly, we decline to utilize the rule of reasonable expectations to circumvent the clear policy language at issue in this case.

Here, the "non-owned automobile" clause unambiguously provides that an automobile furnished for the regular use of either the named insured or any relative is not a nonowned automobile for purposes of the policy. That a question of fact may exist regarding the applicability of the policy language to specific circumstances does not render the policy language ambiguous. See *Foster, supra* at 65; *Highlands, supra* at 175-176. Because no ambiguity exists in the policy language, we enforce the contract as written. *Morley, supra* at 465. Accordingly, the trial court and the Court of Appeals erred in declining to enforce the clause in this case.

### III. CONCLUSION

We conclude that the nonowned automobile clause is unambiguous, and, thus, the policy does not cover vehicles furnished for regular use of either the named insured or any relative, unless the vehicle qualifies as a "temporary substitute vehicle." Because neither the trial court nor the Court of Appeals addressed whether the clause applies under the circumstances of this case, we do not reach that issue. Instead, we reverse the decision of the Court of Appeals and remand to the trial court to consider whether the exclusion applies in this case.

WEAVER, C.J., and BRICKLEY, TAYLOR, and YOUNG, JJ., concurred with CORRIGAN, J.

CAVANAGH, J. (*dissenting*). I would hold that the insurer's method of exclusion by definition is invalid. Most policyholders would consider the term "nonowned" clear without definition. Plaintiff's practice, of defining this unambiguous term in an obscure manner, renders the clause unclear and ambiguous. This case presents the very same definitional exclusions that five members of this Court found unenforceable in *Powers v DAIIE*, 427 Mich 602; 398 NW2d 411 (1986). The lead opinion, signed by two justices, addressed six rules of contract interpretation in concluding that this form of exclusion is an ambiguous, unclear, technical construction that is contrary to the reasonable expectations of the insured. *Id.* at 611. Two of us concurred in that result. *Id.* at 643. Justice LEVIN wrote separately, but in agreement that the exclusion is unenforceable, because it is unconscionable and contrary to the reasonable expectations of an insured. *Id.* at 645-646. Because the identical unfair practice is at issue, I see no reason to overturn our previous refusal to enforce these clauses.

I agree that an insurer may exclude coverage for residual liability when an insured is driving a vehicle owned by a resident family member *as long as the exclusion is clearly and unambiguously stated. Id.* at 642. The lead opinion in *Powers* provided that these exclusions could be made clear to the insured by simply referencing the exclusionary definitions section. *Id.* at 629. Alternatively, the insurer could have listed the exclusions in the exclusions section of the policy. *Id.* at 628. In the thirteen years since *Powers*, the insurer has failed to incorporate any clarification into

its policies. While the insurer has refused to place its insureds on notice regarding its coverage exclusions, this Court placed insurers on notice that this form of exclusion would not be enforced. Today, the majority validates the insurer's defiance.

The majority asserts that the nonowned automobile definition is not an exclusion, but rather a "limitation on coverage by definition of a term used to specify the scope of coverage." *Ante*, p 560, n 1. However, the exclusions section of the policy serves the same purpose of limiting coverage. The majority's statement that the definition does not provide an exclusion here is questionable. It should be of no concern to the majority under its analysis that this definition operates to exclude coverage based on a definition contrary to the common meaning of "nonowned."

I disagree that these definitional exclusions fairly place an insured on notice of coverage limits. The insured should not be forced to piece together portions of the contract to determine whether coverage exists.

KELLY, J., concurred with CAVANAGH, J.