BATCHELDER, Circuit Judge.
Continental Casualty Company (“Continental”) appeals the district court’s order declaring that Continental’s premises liability policy issued to The May Department Stores Company d/b/a Lord & Taylor (“Lord & Taylor”) provided coverage for an alleged wrongful death that occurred in the parking lot outside of Lord & Taylor’s store in the Fairlane Town Center (“Fair-lane”), as a result of actions by Lord & Taylor’s security guards. The district court found, after considering extrinsic evidence, that Continental was obligated under its policy to defend and indemnify Lord & Taylor in the wrongful death liti *765 gation. Because the Continental policy at issue is not ambiguous, and because there was no mutual mistake regarding the terms of the Policy, we find that the district court erred in admitting extrinsic evidence. Further, because the unambiguous terms of the Policy provide coverage only for areas owned by Lord & Taylor, and Lord & Taylor did not own the parking lot where the allegedly wrongful death occurred, the district court erred in holding that Continental was obligated under the Policy to defend and indemnify Lord & Taylor in that litigation. We therefore reverse the judgment of the district court.
I.
On June 22, 2000, Frederick Finley and several of his friends and relatives went to the Lord & Taylor department store in the Fairlane Town Center in Dearborn, Michigan. Lord & Taylor’s security guards saw two members of the group shoplift items from the store. The security guards followed Finley and his group from the store into the parking lot, which is owned by the mall developer, Fairlane. A confrontation ensued in the parking lot, which resulted in Finley’s death.
Finley’s estate brought a wrongful death action against Lord & Taylor and Fairlane in the Circuit Court for the County of Wayne, Michigan. Continental filed a complaint for declaratory judgment in the Circuit Court seeking a declaration that the premises liability insurance policy it had issued to Lord & Taylor did not provide coverage for the allegedly wrongful death of Finley or require Continental to defend the action against Lord & Taylor. Continental’s case was removed to the United States District Court, Eastern District of Michigan, on the basis of diversity jurisdiction. Continental then amended its complaint to name Finley’s representatives and Federal Insurance Company (Lord & Taylor’s excess carrier at the time of the Finley incident), and to name The May Department Stores and Lord & Taylor correctly as defendants. Lord & Taylor filed a counterclaim seeking a declaration that the Continental policy did provide for defense and indemnity for the Finley complaint. Lord & Taylor also filed a third-party Complaint, asserting that if the Continental policy did not provide coverage for the Finley wrongful death action, the shopping mail’s developer, Fairlane, and/or Gallagher Pipino Insurance Agency (“Gallagher Agency”), the company Fair-lane had hired to negotiate the insurance contract with Continental, were responsible for the lack of coverage.
The parties agreed to a bench trial of Continental’s Complaint and Lord & Taylor’s Counterclaim for declaratory judgment. The district court entered “Findings of Fact, Conclusions of Law, and Application of Facts to Law” concluding, in pertinent part, that extrinsic evidence demonstrated that the Policy’s Common Area Endorsement (“premises provision”) was ambiguous. Consequently, the court construed that provision against Continental, and entered a judgment finding that the Continental policy provided coverage for the claims asserted in the wrongful death complaint. The parties then stipulated to a dismissal of all remaining claims without prejudice, making the district court’s order final and appeal-able. Continental timely appealed the district court’s judgment.
II.
The Continental insurance contract at issue here provided coverage for:
“bodily injury”, “property damage”, “personal and advertising injury” and medical expenses arising out of:
1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
*766 2. The project shown in the Schedule.
The parties agree that those premises were specified as “General liability coverage for liability arising out of the exterior common area owned by the named insured, in compliance with the Joint Operating Agreement and/or reciprocal easement agreement in effect,” and that Lord & Taylor was the named insured.
The parties also agree that Michigan law governs this dispute. Under Michigan law, the question of whether contractual terms are ambiguous is a question of law. Port Huron Educ. Assn., MEAJNEA v. Port Huron Area Sch. Dist., 452 Mich. 309, 550 N.W.2d 228, 237 (1996). If contract language is clear and unambiguous, the meaning of that language is also a question of law; the meaning of ambiguous language, however, is a question of fact. Id. Although this court has held that Michigan law allows a court to consider extrinsic evidence on the threshold question of whether a written agreement is ambiguous, American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 422 (6th Cir.1984), that holding was premised on our noting that “Michigan does not apply the parol evidence rule to written documents which do not integrate the agreement of the parties or which only partially integrate the agreement.” Id. In construing insurance contracts, the Michigan courts consistently hold that an insurance contract is ambiguous when “its words may reasonably be understood in different ways.” Farm Bureau Mut. Ins. Co. of Michigan v. Nikkei, 460 Mich. 558, 596 N.W.2d 915, 919 (1999).
The Continental policy designates “the exterior common area owned by the named insured” as covered premises (emphasis added). Lord & Taylor is the “named insured.” It is undisputed that Fairlane owns the parking lot where the security guards assaulted Finley, and that Lord & Taylor does not own that parking lot. Significantly, the Policy contains an integration provision stating that the Continental policy “contains all the agreements” between the insured and Continental and can be amended only by an endorsement issued by Continental. The explicit and unambiguous language of this Policy does not provide coverage for anything occurring in the parking lot.
The defendants reply, however, that the phrase containing the word “owned” is ambiguous when looked at as a whole. The full phrase reads, “Premises: General liability coverage arising out of the exterior common area owned by the named insured, in compliance with the Joint Operating Agreement and/or reciprocal easement agreement in effect.” The Joint Operating Agreement, which establishes rights between Fairlane and owners of the anchor retail stores in Fairlane’s Dearborn, Michigan, shopping center, including Lord & Taylor, requires Lord & Taylor, jointly with the other retailers, to “maintain general public liability insurance against claims on account of bodily injury or death and property damage occurring upon, in, on or about the Common Areas.” Pointing to Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 663 N.W.2d 447, 453 (2003), which holds that “if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous,” the defendants claim that the contract is ambiguous. They argue that the ownership requirement in the Policy’s definition of covered premises “irreconcilably conflicts] with” the Policy’s requirement that the definition of premises be “in compliance” with the Joint Operating Agreement, which in turn demands that all common areas be covered. Therefore, the defendants argue, the district court correctly held that the Policy provision is ambiguous and the court could properly consider extrinsic evidence.
*767 We are not persuaded by the defendants’ argument. The Policy’s reference to the Joint Operating Agreement alone does not make the Policy ambiguous, even if that reference indicates that Lord & Taylor intended the Continental policy to fulfill its requirements for obtaining joint insurance covering the common areas. The Michigan case defendants rely on holds that “if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous.” Id. (emphasis added). The terms of the Joint Operating Agreement are not provisions of the Continental policy-
Nor are the terms of the Joint Operating Agreement incorporated into the Continental policy. Under Michigan law, “[a]l-though neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract.” Forge v. Smith, 458 Mich. 198, 580 N.W.2d 876, 881 n. 21 (1998). The words “in compliance with the Joint Operating Agreement” do not clearly evidence that Continental and Lord & Taylor intended that the Joint Operating Agreement be made part of the Continental policy. The Policy does not reference any particular section of the Joint Operating Agreement, and it would not make sense to presume that all of the terms of the Joint Operating Agreement — a contract between a mall developer and the retailers in that mall governing all aspects of their relationship — are incorporated in the insurance Policy — a contract between a single retailer and an insurance company establishing premises liability coverage for that retailer. Because the Policy contains an integration provision; because there are no obvious terms missing from the Continental policy that would suggest, despite the integration provision, that the parties did not intend the Policy to be an integrated agreement; and because the terms of the Joint Operating Agreement are not part of the Policy, we hold that the language of the Joint Operating Agreement cannot render provisions of the Continental policy ambiguous.
Even if the Joint Operating Agreement were relevant in determining whether the Continental policy is ambiguous, the terms of the Policy and the Joint Operating Agreement do not “irreconcilably conflict with each other.” In fact, they are compatible. The Joint Operating Agreement requires Lord & Taylor to obtain joint insurance over common areas. The Joint Operating Agreement does not, however, limit that obligation to those common areas owned by the developer, as opposed to common areas owned by the individual stores. The Joint Operating Agreement’s requirement that retailers obtain joint insurance covering common areas may, therefore, encompass common areas actually owned by Lord & Taylor, such as the sidewalk outside the store. Additionally, there is no provision in the Joint Operating Agreement that a store must obtain a single insurance policy to cover of all the common areas. Consequently, the Continental policy’s provision of coverage only for common areas owned by Lord & Taylor does not conflict with the Joint Operating Agreement’s requirement that Lord & Taylor obtain insurance coverage for all common areas.
Even if Lord & Taylor believed the Continental policy covered the mall parking lots, that belief does not negate the clear and unambiguous language of the Policy. In Michigan a person who signs a contract cannot later argue that he did not read it or that he believed it was different in its terms. Farm Bureau, 596 N.W.2d at 920. Although the drafter of the Continental policy testified that he wrote the premises section of the Continental policy *768 under the mistaken belief that Lord & Taylor owned the parking lot assigned to its store, Lord & Taylor is the signatory to the contract, not the drafter. There is no evidence that Lord & Taylor was under the mistaken belief that it owned the parking lot. Even if Lord & Taylor believed the Continental policy fully satisfied its obligation under the Joint Operating Agreement to obtain insurance covering all common areas and not just those it actually owned, that mistake would -be one of law, rather than one of fact. In other words, that mistake would have arisen from Lord & Taylor’s failing to read the contract carefully, inasmuch as the words “owned by the named insured” are clear. Consequently, the mistake doctrine does not justify the district court’s consideration of extrinsic evidence.
We therefore conclude that the unambiguous language of the Continental policy provides coverage only for common areas actually owned by Lord & Taylor, and that the district court erred in considering extrinsic evidence to determine that the insurance contract was ambiguous and to interpret that contract to provide coverage beyond those areas. Because the actions resulting in Finley’s death did not occur on property actually owned by Lord & Taylor, the Continental policy did not provide coverage and Continental has no duty to defend the wrongful death action. We decline to reach Continental’s alternative ground for appeal, namely, that premises liability coverage for bodily injury arising out of the “ownership, maintenance or use of the premises” does not extend to this wrongful death, which cannot be shown to be causally related to the ownership, maintenance or use of the parking lot where the death occurred.
IV.
Accordingly, we REVERSE the district court’s judgment in favor of the defendants.