# STATE OF MICHIGAN

# COURT OF APPEALS

RAFAEL GONZALEZ,

       Plaintiff/Counter-Defendant-
       Appellant,

and

KANDIS PURDIE and RICKY RAINES, JR.,

       Plaintiffs-Appellants,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

       Defendant/Counter-Plaintiff-
       Appellee,

and

CRYSTAL CHANTAL BURNS,

       Defendant.

UNPUBLISHED
January 4, 2018

No. 331956
Wayne Circuit Court
LC No. 15-000130-NI

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

       In this action to recover no-fault personal injury protection (PIP) benefits and uninsured motorist benefits arising from a hit-and-run automobile accident, plaintiffs appeal by leave granted orders denying reconsideration or relief from the trial court's two previous orders granting summary disposition in favor of defendant Farm Bureau General Insurance Company of Michigan under MCR 2.116(C)(10). Specifically, in an order dated January 8, 2016, the trial court granted defendant's motion for partial summary disposition with respect to PIP benefits based on fraud. And in an order dated January 22, 2016, the trial court granted defendant's motion for summary disposition of plaintiffs' claims for uninsured motorist benefits because plaintiffs were unable to prove that the unknown driver of the hit-and-run vehicle was uninsured. We reverse both orders and remand for further proceedings.

-1-

On November 2, 2014, at approximately 4:00 a.m., plaintiff Rafael Gonzalez was driving his Chevrolet Camaro in which plaintiffs Kandis Purdie and Ricky Raines Jr. were riding as passengers. Their vehicle was struck by a 2003 Dodge Stratus when the driver of that vehicle failed to stop for a red traffic signal. After the collision, the driver of the Stratus and two other occupants of that vehicle fled on foot. Their identities were never determined. An investigation revealed that the Stratus was owned by defendant Crystal Burns. At her deposition, Burns denied driving the Stratus at the time of the accident, and claimed that the vehicle had been stolen two months earlier. She also testified that the vehicle was uninsured at the time it was stolen. Plaintiffs conducted an insurance search on the Stratus, which failed to reveal the existence of any insurance on the vehicle at the time of the accident.

Plaintiffs filed this action against Burns, as the owner of the Stratus, and defendant, as Gonzalez's no-fault insurer. Their complaint alleged claims for negligence against Burns (Count I), recovery of PIP benefits against defendant (Count II), and recovery of uninsured motorist benefits from defendant pursuant to the terms of defendant's policy (Count III). Defendant filed a counterclaim against Gonzalez, seeking to void Gonzalez's insurance policy and to obtain reimbursement of PIP benefits previously paid to Gonzalez based on either mistake of fact or fraudulent misrepresentations. Defendant alleged that, after the accident, Gonzalez fraudulently represented that he could not work as a semi-truck driver, which involved operating his tractor-trailer, lifting items, and maintaining his equipment. Defendant alleged that it had paid Gonzalez $91,281.21 in PIP benefits in reliance on his misrepresentations. Defendant obtained a video recording of Gonzalez at his truck yard in December 2014, which showed him climbing in and out of the cab of his truck using both hands, and driving the tractor-trailer. At his deposition, Gonzalez testified that he returned to work in December 2014 to maintain his truck and determine if he was able to fully perform the requirements of his job, but discovered that he was still not able to resume working full time. Defendant argued that Gonzalez misrepresented his ability to work, entitling it to rescind the policy and obtain reimbursement of all PIP benefits previously paid to Gonzalez.

At issue are defendant's two motions for summary disposition, which were both filed under MCR 2.116(C)(10). In the first motion, defendant argued that plaintiffs could not prevail on their claim for uninsured motorist coverage because they could not prove that the driver of the Status, whose identity was unknown, was uninsured. In the second motion, defendant argued that Gonzalez was precluded from recovering PIP benefits because he violated the "fraud or concealment" clause of his policy by (1) misrepresenting his ability to work and continuing to receive wage-loss benefits when he was able to work, and (2) submitting a wage-loss form that was signed by Britni Sanders who was falsely identified as the "CFO" of Gonzalez's trucking company. In separate orders, the trial court granted each motion. It also denied plaintiffs' motions for reconsideration under MCR 2.119(F)(3), or relief from the court's orders under MCR 2.612(C)(1)(a) or (f). This Court granted plaintiffs' application for leave to appeal.

## I. STANDARD OF REVIEW

We review de novo a trial court's summary disposition decision. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich

App 45, 48; 536 NW2d 834 (1995). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties, viewing that evidence in a light most favorable to the nonmoving party. MCR 2.116(G)(5). A court may not decide issues of credibility or disputed facts when ruling on a motion for summary disposition. *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998).

A trial court's ruling on a motion for reconsideration under MCR 2.119(F)(3) and on a motion for relief from an order under MCR 2.612(C) is reviewed for an abuse of discretion, which occurs when the court's decision falls outside the range of reasonable and principled outcomes. *St John Macomb-Oakland Hosp v State Farm Mut Auto Ins Co*, 318 Mich App 256, 261; 896 NW2d 85 (2016); *Williams v Williams*, 214 Mich App 391, 397; 542 NW2d 892 (1995).

This case also involves the interpretation of an insurance policy, which is a question of law that we review de novo. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 713-714; 706 NW2d 426 (2005).

## II. FRAUD OR CONCEALMENT

Plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition based on its determination that Gonzalez violated the "fraud or concealment" clause of its insurance policy. We agree.

Defendant's policy provides, in pertinent part:

C. Fraud or Concealment

The entire policy will be void if, whether before or after a loss, you, any family member, or any insured under this policy has:

1. intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

relating to this insurance or to a loss to which this insurance applies.

The trial court agreed with defendant that the entire policy was void because Gonzalez engaged in fraud or made false statements regarding his ability to work and return to work, and by falsely identifying Sanders as CFO of Gonzalez's trucking company.

Insurance policies are construed in accordance with this state's well-established rules of contract construction. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 35; 772 NW2d 801 (2009). A policy must be enforced in accordance with its terms and a court may not hold an insurer liable for a risk it did not assume. *Id*. When interpreting an insurance contract, this Court reads it as a whole and accords its terms their plain and ordinary meaning. *State Farm*

*Mut Auto Ins Co v Descheemaeker*, 178 Mich App 729, 731; 444 NW2d 153 (1989). Courts will enforce an insurance contract as written if no ambiguity exists. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). In *Mina v Gen Star Indemnity Co*, 218 Mich App 678; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997), this Court stated:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id*. at 686-687 (internal citations omitted).]

The trial court agreed that defendant was entitled to void the entire policy because Gonzalez misrepresented his ability to work and continued to receive wage-loss benefits after he was able to return to work. We conclude, however, that there are genuine issues of material fact regarding whether Gonzalez was able to fully return to work in December 2014, and whether he misrepresented his ability to work as a truck driver or fraudulently continued to receive wage-loss benefits after he was able to resume working. As indicated, defendant obtained video evidence showing Gonzalez at his truck yard climbing in and out of the cab of his truck, maintaining the truck, and driving short distances in December 2014. At his deposition, Gonzalez initially denied driving his tractor-trailer between November 2, 2014 and January 2015. He later clarified, however, that he did go to the truck yard during this period, but explained that he went there only to maintain his truck and to determine if he was able to fully perform his job, which he was not able to do. Gonzalez also testified that he contacted defendant's adjuster, Tiffany Hawkins, to inform her that he had gone to work but discovered that he could not do his job. And he did not return to work until April 2015.

Defendant relies on this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), in which this Court held that a general fraud exclusion in the insured's policy was applicable to bar the plaintiff's claim for replacement services. *Id*. at 425. In that case, the plaintiff presented a claim for replacement services for 19 days preceding the date of the car accident forming the basis for the claim. *Id*. In addition, a video recording showed the plaintiff bending, lifting and carrying objects, running errands, and driving on dates that she specifically claimed she needed help with those tasks. *Id*. This Court affirmed the trial court's decision to grant summary disposition for the insurer based on the plaintiff's fraudulent misrepresentations in seeking PIP benefits. *Id*. at 426.

This case is factually distinguishable from *Bahri*, and there are genuine issues of material fact regarding whether Gonzalez made fraudulent misrepresentations or false statements regarding his condition and ability to work. Defendant argues that Gonzalez made false statements at his deposition when he initially denied returning to work in December 2014. As explained, however, Gonzalez later clarified that he went to his employer's truck yard in December 2014 only to maintain his truck and determine if he was able to return to work. To the extent that Gonzalez's initial deposition testimony may be deemed false, defendant could not

have relied on that testimony because Gonzalez later corrected and clarified his earlier statements in his deposition.

In addition, defendant has not shown that it is undisputed that Gonzalez misrepresented his ability to work. In support of its claim that Gonzalez misrepresented his ability to return to work, defendant relied on Gonzalez's activities in the truck yard and the surveillance report. Gonzalez admitted engaging in activities necessary to maintain his truck so it would not be damaged while he was off from work, and attempting to determine his ability to return to work. However, neither defendant's evidence nor Gonzalez's admissions establish that Gonzalez was able to fully resume his duties as a truck driver. Gonzalez described back problems and problems with his arm that prevented him from operating his truck for extended periods. Defendant's surveillance report only reported Gonzalez driving a short distance. A jury could conclude from the evidence that Gonzalez did not misrepresent his ability to work and was only being proactive about attempting to determine his ability to return to work and perform the physical requirements of his job when he went to the truck yard in December 2014. The limited physical activities that Gonzalez performed at the truck yard in 2014 do not show that there is no genuine issue of material fact regarding whether he falsely applied for and received work-loss benefits. Moreover, we note that Gonzalez submitted a wage-loss form, dated November 28, 2014, in which he represented that he was still off work due to his disability, but listed December 9, 2014, as the estimated date of his return. That form is consistent with Gonzalez's testimony that he was hopeful of returning to work in December 2014, and inconsistent with defendant's claim that Gonzalez intended to misrepresent his ability to return to work to defraud defendant.

The trial court also determined that Gonzalez violated the "fraud or concealment" clause of defendant's policy by submitting a wage-loss verification form signed by Sanders, who was falsely identified as the CFO of Gonzalez's trucking company.

At his deposition, Gonzalez admitted that Sanders did not hold a position or title with his company and that he had her add "CFO" to her name on the form. Similarly, Sanders admitted at her deposition that she did not hold a position with Gonzalez's company and was not its CFO. Sanders stated that she filled out the wage-loss form with Gonzalez, providing some information that he told her to add. But Sanders also stated that she was personally familiar with the information regarding Gonzalez's salary and income because she had seen his W-2 forms and she had helped with his business since March 2014. We again conclude that there are genuine issues of material fact that precluded summary disposition with respect to the wage-loss form. Although defendant established that Sanders was not an employee or officer of Gonzalez's company, and that the CFO designation was not accurate, defendant failed to establish that these misrepresentations were "relat[ed] to this insurance or to a loss to which this insurance applies." Significantly, defendant has not shown that any of the reported information regarding Gonzalez's income was false. In addition, Gonzalez furnished defendant with other financial information, including pay statements from Red Cap Transport, detailing the pay he received as a driver for that company and the payments that Red Cap Transport made to Gonzalez's company. Defendant has not demonstrated that Gonzalez misrepresented his salary or income such that defendant was misled into paying Gonzalez incorrect amounts.

In sum, because there are genuine issues of material fact regarding whether Gonzalez misrepresented his ability to work and continued to receive wage-loss benefits after he was able

to return to work, or misrepresented his income associated with his work, the trial court erred in granting defendant's motion for summary disposition on the basis of fraud. Accordingly, we reverse the trial court's order dismissing plaintiffs' claims on the basis of Gonzalez's alleged fraud, and also reverse the trial court's judgment in favor of defendant on its counterclaim against Gonzalez.

### III. UNINSURED MOTORIST COVERAGE

Plaintiffs also argue that the trial court erred in holding that they were precluded from recovering uninsured motorist benefits because the driver of the hit-and-run vehicle could not be determined, thus preventing plaintiffs from proving that the driver was uninsured. We again agree.

Defendant relied on the following *general* provision in its policy to argue that plaintiffs were required to prove that both the "auto and operator" of the other vehicle were uninsured to qualify for uninsured motorist coverage:

G. Additional Duties for Uninsured Motorist Coverage

\* \* \*

2. The injured person making claim must:

a. provide proof(s) affirming that the auto and operator were not covered by a liability policy or bond at the time of the accident. . . .

Plaintiffs argue, however, that the *specific* policy provisions applicable to hit-and-run accidents apply in this case; thus, they were entitled to uninsured motorist coverage even though the operator of the other vehicle was unknown. That is, defendant's policy defines an "uninsured automobile" to include "an auto operated on a public highway" "that is a hit-and-run auto."[1] The policy defines a "hit-and-run auto" as an automobile

a. that causes bodily injury by actual physical contact with the injured person or the auto the injured person is occupying;

b. whose owner **or** operator is unknown;

c. involved in an accident that has been reported to the police within 24 hours of when the hit-and-run accident occurs. . . . ; and

d. involved in an accident that has been reported to us . . . .[2]

---

[1] See Part IV, § B, ¶ 5a(4) of defendant's policy.

[2] See Part IV, § B, ¶ 3 of defendant's policy.

As our Supreme Court explained in *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012), because uninsured motorist coverage "is optional and not statutorily mandated under the no-fault act, the policy language alone controls the circumstances entitling a claimant to an award of benefits." Further, the policy language is construed "in the same manner as any other species of contract, giving its terms their ordinary and plain meaning if such would be apparent to a reader of the instrument." *Id*. at 367 (footnotes, quotation marks, and citations omitted). The *DeFrain* Court also recognized that, like the settled rule regarding statutory construction, a specific contract provision controls over a related but more general contract provision. *Id*. at 367 n 22; see also *Royal Prop Group*, 267 Mich App at 719.

In this case, because plaintiffs are seeking benefits arising from a hit-and-run accident, the specific policy provisions pertaining to hit-and-run accidents are applicable. See *DeFrain*, 491 Mich at 367 n 22. Accordingly, the trial court erred in ruling that defendant's policy required plaintiffs to offer proof that both the owner *and* operator of the vehicle that struck Gonzalez's car were uninsured at the time of the accident. The general policy provision relied on by the trial court, ¶ G.2.a, is not controlling over the specific provisions pertaining to hit-and-run accidents. See *id*. The policy specifically provides that an "uninsured automobile" includes a "hit-and-run auto," which is an auto that strikes another vehicle or a person, causing bodily injury, whose "owner or operator" is unknown, and which is reported to the police and defendant.

The evidence established that plaintiffs' vehicle was struck by another vehicle, causing bodily injury to the occupants of plaintiffs' vehicle, and the accident was reported to the police and defendant. This leaves only the requirement that the auto that struck plaintiffs' vehicle be an auto "whose owner *or* operator is unknown." This phrase uses the term "or" to distinguish the terms "owner" and "operator." The term "or" is "generally construed as referring to an alternative or choice between two or more things." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 69; 535 NW2d 529 (1995). Thus, to meet the definition of a "hit-and-run auto," it is only necessary that either the owner *or* the operator be unknown. In this case, although Burns was identified as the owner of the vehicle that struck plaintiffs' vehicle, Burns denied driving the vehicle at the time of the accident and claimed that the vehicle had been stolen. And plaintiffs presented evidence that the identity of the operator was unknown because the driver fled the scene after the accident, i.e., that they were involved in an accident with an "uninsured automobile" under the terms of defendant's policy.

Therefore, the trial court erred in granting defendant's motion for summary disposition on the basis of its conclusion that plaintiffs could not prove that the unknown driver of the hit-and-run vehicle did not have insurance. Accordingly, we also reverse the trial court's order dismissing plaintiffs' claim for uninsured motorist benefits and remand for further proceedings on that claim.

In light of our decision, it is unnecessary to address plaintiffs' remaining arguments on appeal.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh