*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LISA MARIE DUKER,

        Plaintiff-Appellant,

v

EVEREST NATIONAL INSURANCE
COMPANY,

        Defendant-Appellee,

and

JOHN ROBERT HUDSON,

        Defendant.

UNPUBLISHED
June 18, 2019

No. 344229
Genesee Circuit Court
LC No. 17-108549-NI

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant Everest National Insurance Company's motion for summary disposition under MCR 2.116(C)(10) and granting rescission of the automobile insurance policy agreement between plaintiff and Everest[1] on the basis that plaintiff had made a material misrepresentation in her insurance application. We affirm.

## I. BACKGROUND

In January 2016, plaintiff obtained an automobile insurance policy with Everest. To obtain coverage, plaintiff was required to complete an insurance application, which she

---

[1] Defendant John Robert Hudson was voluntarily dismissed and is not a party to this appeal.

-1-

completed with the help of an independent insurance agent. The first page of the application contained a paragraph entitled "Driver Information Note," which provided:

> ALL HOUSEHOLD MEMBERS AGE 14 OR OLDER, INCLUDING BUT NOT LIMITED TO SPOUSE(S), ROOMMATE(S), CHILDREN, FAMILY MEMBERS AND WARDS MUST BE LISTED AS POTENTIAL DRIVERS. IN ADDITION, ALL INDIVIDUALS OUTSIDE THE HOUSEHOLD AND ANY DRIVERS TO WHOM THE INSURED AUTO(S) IS FURNISHED OR AVAILABLE FOR HIS OR HER USE, EVEN OCCASIONALLY AND/OR INFREQUENTLY, MUST BE IDENTIFIED AND LISTED BELOW. YOUR TOTAL POLICY PREMIUM CAN BE AFFECTED BY THIS INFORMATION.

On plaintiff's version of the application, beneath the "Driver Information Note," was a box entitled "Full Name Of All Drivers (As Appear on License)." The box listed only plaintiff's name and that of her husband, as well as their driver's license numbers.

On the last page of the application was an "Applicant Questionnaire" with 12 questions. Question seven of the questionnaire asked: "Have you identified on this application all members of your household who are over the age of 14?" Next to this question was a "yes" box and, in lieu of a "no" box, the word "Unacceptable." The "yes" box was checked on plaintiff's application. Finally, at the end of the application and above the signature line, there was a paragraph labeled "Applicant's Statement – Read Before Signing." The relevant portion of this paragraph read:

> I certify that all household members age 14 or older, including but not limited to spouse(s), roommate(s), children, family members and wards have been listed as potential drivers. In addition all individuals outside the household and any drivers to whom the insured auto(s) is furnished or available for his or her use, even occasionally and/or infrequently, have been identified and listed below. I understand that my total policy premium could be affected by this information.

Plaintiff signed below this statement. On the basis of her application, Everest issued plaintiff an insurance policy with a premium of $1,266. Despite her statements in the application, plaintiff had two sons living in her household who were over the age of 14.

In February 2016, plaintiff was injured in an automobile accident involving defendant John Robert Hudson. Plaintiff sustained serious injuries in this accident and later filed a first-party claim against Everest for personal injury protection (PIP) benefits and for uninsured motorist coverage.[2]

In December 2017, Everest filed its motion for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had made material misrepresentations on the application that

---

[2] Plaintiff also filed a third-party claim against Hudson, but this claim is not at issue in this appeal.

voided the insurance policy and permitted rescission. Everest argued that if the information about plaintiff's sons had been disclosed then the premium would have increased by at least $2,104. Plaintiff countered that she had not made an intentional misrepresentation, that it was largely the insurance agent who had completed the application, and that the insurance application was ambiguous. Plaintiff further argued that reformation was the proper remedy and not rescission; according to plaintiff, the most equitable result would be for her to retroactively pay the higher premium instead of losing coverage. The trial court found that the policy unambiguously required plaintiff to list her sons on the insurance application and that plaintiff had innocently misrepresented her household members. The trial court granted Everest's motion for summary disposition under MCR 2.116(C)(10), concluding that rescission, rather than reformation, was the appropriate remedy. This appeal followed.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred by granting summary disposition to defendant because the insurance application was ambiguous and, alternatively, the proper remedy for plaintiff's innocent misrepresentation was reformation of the contract, not rescission. "We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; ___ NW2d ___ (2018). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 294. We review de novo questions of contract interpretation and equitable issues, including arguments for rescission or reformation. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005); *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013).

## A. AMBIGUITY

Plaintiff first argues that, when read as a whole, the insurance application was ambiguous and that it was unclear whether the applicant was to disclose members of the household who would not be driving the insured vehicles. We disagree.

"Insurance policies are contracts subject to the same contract construction principles that apply to any other species of contract." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018) (internal citation and quotation marks omitted). "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory* 473 Mich at 461. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. at 464. "An insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999).

In the present case, the application stated in three separate locations that plaintiff was required to disclose members of her household aged 14 or older. First, the "Driver Information Note" paragraph stated that "ALL HOUSEHOLD MEMBERS AGE 14 OR OLDER, INCLUDING BUT NOT LIMITED TO . . . CHILDREN . . . MUST BE LISTED AS POTENTIAL DRIVERS." This provision clearly asked plaintiff to disclose all household

members aged 14 or older and to list them as potential drivers. Plaintiff focuses much of her argument on this particular section, pointing out that there was no space to list these household members. Plaintiff also argues that the next section, entitled "Full Name Of All Drivers," conflicted with the "Driver Information Note" because it did not state all "potential" drivers. Nonetheless, as Everest has explained, the application was electronic and, on the basis of plaintiff's answers to certain questions, the application would adjust itself to include the appropriate sections. Had plaintiff disclosed her son's residence with her, the computer program would have generated an "excluded drivers" section listing the two family members.[3] Plaintiff's failure to disclose her sons' residency is the reason the application does not include a section listing them and therefore the absence of this section does not create any ambiguity. Moreover, in the "Applicant Questionnaire," question seven asked: "Have you identified on this application all members of your household who are over the age of 14?" Similarly, the "Applicant's Statement" paragraph above the signature certified that "all household members age 14 or older, including but not limited to . . . children . . . have been listed as potential drivers."

Taken as a whole, these sections unambiguously required plaintiff to disclose her sons' residency in her home on the insurance application. The trial court did not err by concluding that the contract was unambiguous and that plaintiff's failure to disclose her sons' residency entitled defendant to judgment as a matter of law.

## B. REMEDY

Next, plaintiff argues that rescission was an improper remedy. Plaintiff contends that the more equitable remedy would have been permitting her to retroactively pay the higher premium rather than to rescind the entire agreement and leave her without coverage. We disagree.

"It is well-settled that a material misrepresentation made in an application for no-fault insurance entitles the insurer to rescind the policy." *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). Even when the misrepresentation was made innocently, recession is justified when "a party relies on the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if [she] were not held accountable for [her] misrepresentation." *Id*. Materiality does not depend on a connection between the misrepresentation and the accident that occurred. *Auto-Owners Ins Co v Mich Comm'r of Ins*, 141 Mich App 776, 781; 369 NW2d 896 (1985). It depends, instead, on "the misrepresentation as it relates to the procurement of the policy of insurance." *Id*. A misrepresentation is material when "reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as *substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium*." *Id*. (internal citation and quotation marks omitted).

---

[3] Plaintiff did not dispute or otherwise challenge this explanation and offers no reasons on appeal for why this explanation was false or unsatisfactory. In other words, plaintiff took no steps to dispute whether the application generated itself in the way that Everest claimed.

Plaintiff does not dispute that she misrepresented her sons' residency in her home on the insurance application. Plaintiff, however, argues that the contract should not be rescinded because she did so innocently, particularly because she was guided through the insurance application by an agent. We fail to see the importance of this distinction. Plaintiff provided the information to her agent and, in any event, signed the application, certifying that she disclosed any household members above the age of 14. It is not a defense that the insurance agent completed the application and that plaintiff did not read the application. See *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 129-130; 713 NW2d 810 (2005).

Moreover, there is no question that the misrepresentation was material. A representative of Everest's third-party underwriter affirmed by affidavit that he had examined plaintiff's application and that, if plaintiff had disclosed her two sons, the policy's premium would have increased by approximately $2,104. See *Auto-Owners Ins Co*, 141 Mich App at 781. The trial court did not err by granting Everest rescission of the contract.

Affirmed.


/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly