NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0588n.06
Filed:  July 12, 2005

Case No. 03-1998

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| THE MAY DEPARTMENT STORES | ) | DISTRICT OF MICHIGAN |
| COMPANY, d/b/a LORD & TAYLOR, MAY | ) | |
| FINLEY, CARLA SULLIVAN-FINLEY, | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| FAIRLANE TOWN CENTER, | ) | |
| GALLAGHER PIPINO, INCORPORATED, | ) | |
| | ) | |
| Third Party-Defendants. | ) | |
| | ) | |

_____

BEFORE:  MARTIN and BATCHELDER, Circuit Judges; JORDAN,[*] District Judge.

ALICE M. BATCHELDER, Circuit Judge.    Continental Casualty Company ("Continental") appeals the district court's order declaring that Continental's premises liability policy issued to The May Department Stores Company d/b/a Lord & Taylor ("Lord & Taylor") provided coverage for an alleged wrongful death that occurred in the parking lot outside of Lord & Taylor's store in the Fairlane Town Center ("Fairlane"), as a result of actions by Lord & Taylor's security guards.  The district court found, after considering extrinsic evidence, that Continental was

---

[*]The Honorable R. Leon Jordan, District Judge for the Eastern District of Tennessee, sitting by designation.

obligated under its policy to defend and indemnify Lord & Taylor in the wrongful death litigation. Because the Continental policy at issue is not ambiguous, and because there was no mutual mistake regarding the terms of the Policy, we find that the district court erred in admitting extrinsic evidence. Further, because the unambiguous terms of the Policy provide coverage only for areas owned by Lord & Taylor, and Lord & Taylor did not own the parking lot where the allegedly wrongful death occurred, the district court erred in holding that Continental was obligated under the Policy to defend and indemnify Lord & Taylor in that litigation. We therefore reverse the judgment of the district court.

## I.

On June 22, 2000, Frederick Finley and several of his friends and relatives went to the Lord & Taylor department store in the Fairlane Town Center in Dearborn, Michigan. Lord & Taylor's security guards saw two members of the group shoplift items from the store. The security guards followed Finley and his group from the store into the parking lot, which is owned by the mall developer, Fairlane. A confrontation ensued in the parking lot, which resulted in Finley's death.

Finley's estate brought a wrongful death action against Lord & Taylor and Fairlane in the Circuit Court for the County of Wayne, Michigan. Continental filed a complaint for declaratory judgment in the Circuit Court seeking a declaration that the premises liability insurance policy it had issued to Lord & Taylor did not provide coverage for the allegedly wrongful death of Finley or require Continental to defend the action against Lord & Taylor. Continental's case was removed to the United States District Court, Eastern District of Michigan, on the basis of diversity jurisdiction. Continental then amended its complaint to name Finley's representatives and Federal Insurance Company (Lord & Taylor's excess carrier at the time of the Finley incident), and to name

2

The May Department Stores and Lord & Taylor correctly as defendants. Lord & Taylor filed a counterclaim seeking a declaration that the Continental policy did provide for defense and indemnity for the Finley complaint. Lord & Taylor also filed a third-party Complaint, asserting that if the Continental policy did not provide coverage for the Finley wrongful death action, the shopping mall's developer, Fairlane, and/or Gallagher Pipino Insurance Agency ("Gallagher Agency"), the company Fairlane had hired to negotiate the insurance contract with Continental, were responsible for the lack of coverage.

The parties agreed to a bench trial of Continental's Complaint and Lord & Taylor's Counterclaim for declaratory judgment. The district court entered "Findings of Fact, Conclusions of Law, and Application of Facts to Law" concluding, in pertinent part, that extrinsic evidence demonstrated that the Policy's Common Area Endorsement ("premises provision") was ambiguous. Consequently, the court construed that provision against Continental, and entered a judgment finding that the Continental policy provided coverage for the claims asserted in the wrongful death complaint. The parties then stipulated to a dismissal of all remaining claims without prejudice, making the district court's order final and appealable. Continental timely appealed the district court's judgment.

## II.

The Continental insurance contract at issue here provided coverage for:

> "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
> 2. The project shown in the Schedule.

3

The parties agree that those premises were specified as "General liability coverage for liability arising out of the exterior common area owned by the named insured, in compliance with the Joint Operating Agreement and/or reciprocal easement agreement in effect," and that Lord & Taylor was the named insured.

The parties also agree that Michigan law governs this dispute. Under Michigan law, the question of whether contractual terms are ambiguous is a question of law. *Port Huron Educ. Assn., MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). If contract language is clear and unambiguous, the meaning of that language is also a question of law; the meaning of ambiguous language, however, is a question of fact. *Id*. Although this court has held that Michigan law allows a court to consider extrinsic evidence on the threshold question of whether a written agreement is ambiguous, *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir. 1984), that holding was premised on our noting that "Michigan does not apply the parol evidence rule to written documents which do not integrate the agreement of the parties or which only partially integrate the agreement." *Id.* In construing insurance contracts, the Michigan courts consistently hold that an insurance contract is ambiguous when "its words may reasonably be understood in different ways." *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999).

The Continental policy designates "the exterior common area *owned by* the named insured" as covered premises (emphasis added). Lord & Taylor is the "named insured." It is undisputed that Fairlane owns the parking lot where the security guards assaulted Finley, and that Lord & Taylor does not own that parking lot. Significantly, the Policy contains an integration provision stating that the Continental policy "contains all the agreements" between the insured and Continental and can

4

be amended only by an endorsement issued by Continental. The explicit and unambiguous language of this Policy does not provide coverage for anything occurring in the parking lot.

The defendants reply, however, that the phrase containing the word "owned" is ambiguous when looked at as a whole. The full phrase reads, "Premises: General liability coverage arising out of the exterior common area owned by the named insured, in compliance with the Joint Operating Agreement and/or reciprocal easement agreement in effect." The Joint Operating Agreement, which establishes rights between Fairlane and owners of the anchor retail stores in Fairlane's Dearborn, Michigan, shopping center, including Lord & Taylor, requires Lord & Taylor, jointly with the other retailers, to "maintain general public liability insurance against claims on account of bodily injury or death and property damage occurring upon, in, on or about the Common Areas." Pointing to *Klapp v. United Ins. Group Agency*, *Inc.*, 663 N.W.2d 447, 453 (Mich. 2003), which holds that "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous," the defendants claim that the contract is ambiguous. They argue that the ownership requirement in the Policy's definition of covered premises "irreconcilably conflict[s] with" the Policy's requirement that the definition of premises be "in compliance" with the Joint Operating Agreement, which in turn demands that all common areas be covered. Therefore, the defendants argue, the district court correctly held that the Policy provision is ambiguous and the court could properly consider extrinsic evidence.

We are not persuaded by the defendants' argument. The Policy's reference to the Joint Operating Agreement alone does not make the Policy ambiguous, even if that reference indicates that Lord & Taylor intended the Continental policy to fulfill its requirements for obtaining joint insurance covering the common areas. The Michigan case defendants rely on holds that "if *two*

5

*provisions of the same contract* irreconcilably conflict with each other, the language of the contract is ambiguous." *Id.* (emphasis added). The terms of the Joint Operating Agreement are not provisions of the Continental policy.

Nor are the terms of the Joint Operating Agreement incorporated into the Continental policy. Under Michigan law, "[a]lthough neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract." *Forge v. Smith*, 580 N.W.2d 876, 881 n.21 (Mich. 1998). The words "in compliance with the Joint Operating Agreement" do not clearly evidence that Continental and Lord & Taylor intended that the Joint Operating Agreement be made part of the Continental policy. The Policy does not reference any particular section of the Joint Operating Agreement, and it would not make sense to presume that all of the terms of the Joint Operating Agreement—a contract between a mall developer and the retailers in that mall governing all aspects of their relationship—are incorporated in the insurance Policy—a contract between a single retailer and an insurance company establishing premises liability coverage for that retailer. Because the Policy contains an integration provision; because there are no obvious terms missing from the Continental policy that would suggest, despite the integration provision, that the parties did not intend the Policy to be an integrated agreement; and because the terms of the Joint Operating Agreement are not part of the Policy, we hold that the language of the Joint Operating Agreement cannot render provisions of the Continental policy ambiguous.

Even if the Joint Operating Agreement were relevant in determining whether the Continental policy is ambiguous, the terms of the Policy and the Joint Operating Agreement do not "irreconcilably conflict with each other." In fact, they are compatible. The Joint Operating

6

Agreement requires Lord & Taylor to obtain joint insurance over common areas. The Joint Operating Agreement does not, however, limit that obligation to those common areas owned by the developer, as opposed to common areas owned by the individual stores. The Joint Operating Agreement's requirement that retailers obtain joint insurance covering common areas may, therefore, encompass common areas actually owned by Lord & Taylor, such as the sidewalk outside the store. Additionally, there is no provision in the Joint Operating Agreement that a store must obtain a single insurance policy to cover of all the common areas. Consequently, the Continental policy's provision of coverage only for common areas owned by Lord & Taylor does not conflict with the Joint Operating Agreement's requirement that Lord & Taylor obtain insurance coverage for all common areas.

Even if Lord & Taylor believed the Continental policy covered the mall parking lots, that belief does not negate the clear and unambiguous language of the Policy. In Michigan a person who signs a contract cannot later argue that he did not read it or that he believed it was different in its terms. *Farm Bureau*, 596 N.W.2d at 920. Although the drafter of the Continental policy testified that he wrote the premises section of the Continental policy under the mistaken belief that Lord & Taylor owned the parking lot assigned to its store, Lord & Taylor is the signatory to the contract, not the drafter. There is no evidence that Lord & Taylor was under the mistaken belief that it owned the parking lot. Even if Lord & Taylor believed the Continental policy fully satisfied its obligation under the Joint Operating Agreement to obtain insurance covering all common areas and not just those it actually owned, that mistake would be one of law, rather than one of fact. In other words, that mistake would have arisen from Lord & Taylor's failing to read the contract carefully, inasmuch

7

as the words "owned by the named insured" are clear.  Consequently, the mistake doctrine does not justify the district court's consideration of extrinsic evidence.

We therefore conclude that the unambiguous language of the Continental policy provides coverage only for common areas actually owned by Lord & Taylor, and that the district court erred in considering extrinsic evidence to determine that the insurance contract was ambiguous and to interpret that contract to provide coverage beyond those areas.  Because the actions resulting in Finley's death did not occur on property actually owned by Lord & Taylor, the Continental policy did not provide coverage and Continental has no duty to defend the wrongful death action.  We decline to reach Continental's alternative ground for appeal, namely, that premises liability coverage for bodily injury arising out of the "ownership, maintenance or use of the premises" does not extend to this wrongful death, which cannot be shown to be causally related to the ownership, maintenance or use of the parking lot where the death occurred.

**IV.**

Accordingly, we **REVERSE** the district court's judgment in favor of the defendants.

8

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. The majority concludes that the Continental Casualty insurance policy at issue in this case is unambiguous and that the policy does not cover the costs of settling the Finley suit. Because this holding contradicts principles of contract law that are well-established in Michigan jurisprudence, I dissent from the majority's reversal of the district court's well-reasoned opinion.

## I.

On June 22, 2000, Frederick Finley, his girlfriend, her daughter, and a friend with two minor sons visited the Lord & Taylor department store in the Fairlane Town Center in Dearborn, Michigan. While they were in the store, Lord & Taylor's security personnel allegedly saw at least one of the minors shoplift items. As the group left the building and approached their parked car in the Fairlane parking lot, Lord & Taylor's security agents confronted them, allegedly accosting an accused minor. Finley, who was ahead of the group, rushed back to come to the minor's aid and allegedly assaulted the security officials. When he did, the security officials apparently knocked him to the ground and choked him with a gold chain Finley wore around his neck. As a result of the altercation, Finley died. Finley's estate filed a wrongful-death suit against Lord & Taylor, the insured, and Fairlane, which settled for more than $3 million. Continental Casualty, the insurer, now denies that it owes coverage, thus making a brief history of the insurance policy and its terms of coverage necessary.

Lord & Taylor, an operating division of May Department Stores, first became a party to the Fairlane Town Center's Operating Agreement on November 9, 1978. Paragraph 12(C) of the Operating Agreement describes the insurance that is to be secured by the parties jointly. Paragraph 12(C) states in relevant part:

9

> The parties hereto each agree that they will, jointly, commencing with the completion of the Common Areas on their respective Sites and at all times and continuously thereafter maintain general public liability insurance against claims on account of bodily injury or death and property damage *occurring upon, in, on, or about the Common Areas* (excluding Developer's buildings, including the Mall, and each of the other parties' buildings) on the Total Property . . . .

(emphasis added). The district court found that "Common Areas" includes, among other areas, the parking lots outside the stores of the Town Center, including the parking lot where Finley's death occurred.

Pursuant to the Joint Operating Agreement, Fairlane, the developer, through the Gallagher Pipino Agency, obtained an insurance policy from Continental. When drafting the Continental policy, the Gallagher Pipino Agency assumed that the stores of the mall owned the parking lots allocated to the stores, while, in actuality, Fairlane owned the lots. Consequently, the Continental policy contains a "Common Areas" endorsement that reads:

> LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT, CG 2144, IS HEREBY AMENDED FOR LIABILITY ARISING OUT OF THE EXTERIOR COMMON AREA *OWNED BY THE NAMED INSURED [Lord & Taylor]*, IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT AND/OR RECIPROCAL EASEMENT AGREEMENT IN EFFECT.

(emphasis added). Another endorsement ("Ownership Endorsement") to the policy reads:

> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
> 1. The *ownership, maintenance or use of the premises* shown in the Schedule and operations necessary or incidental to those premises; or
> 2. The project shown in the Schedule.

(emphasis added).

Thus, the central issue in this case is whether the Continental policy covers the costs of settling the Finley dispute. On March 14, 2003, the district court ruled that Continental was obligated to indemnify Lord & Taylor and its supplemental insurance company Federal

10

$3,461,967.03 for the payments made in settlement of the Finley matter. In reaching its decision, the court held that the Common Areas Endorsement of the Continental policy was ambiguous because it suggests conflicting coverage guidelines. While the Common Areas Endorsement states that policy only covers "liability arising out of the exterior common area owned by" Lord & Taylor, the very next sentence states that the amended policy is "in compliance with the Joint Operating Agreement," which requires the parties to maintain insurance jointly to cover claims of injury "occurring upon, in, on, or about the Common areas," including parking lots owned by the developer Fairlane. Finding that the policy could not do both, the court construed the ambiguity in favor of the insured and looked to extrinsic evidence in finding that it was the intent of the parties to include coverage of injuries such as those sustained by Finley. The court also rejected Continental's argument that the liability in the Finley matter did not "arise out of" the common area, noting Michigan courts' broad interpretation of similar contractual language.

On appeal, Continental claims that the language of the policy agreement is not ambiguous and, under the Common Areas Endorsement, covers only the "COMMON AREA OWNED BY THE NAMED INSURED [Lord & Taylor]." Because the parking lot where Finley died is actually owned by the developer Fairlane and not Lord & Taylor, Continental argues that it is not responsible to the insured under the policy. Alternatively, Continental argues that even if the Common Areas Endorsement does not preclude liability for accidents occurring in the parking lot, it is not obligated because there is no direct causal connection between the condition of the parking lot and the injury to Finley, which, it claims, is required under the policy.

II.

11

On appeal from a district court judgment entered following a bench trial, this Court reviews the lower court's legal conclusions de novo. *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999). The district court's factual findings, however, are reviewed for clear error. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004).

The parties concede that Michigan law applies to the present case. Under Michigan law, an insurance contract must be enforced according to its terms if those terms are unambiguous. *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). Although parol evidence is not admissible to alter an unambiguous contract, it is well-established that parol evidence is admissible to prove the existence of an ambiguity or the intent of the parties if the proffered parol evidence is not inconsistent with the written terms. *See, e.g.*, *Am. Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir. 1984) (citing *Goodwin, Inc. v. Orsen E. Coe Pontiac, Inc.*, 220 N.W.2d 664, 671 (Mich. 1974)). While "reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings," ambiguous terms of an insurance policy must be construed in favor of the insured. *Henderson*, 596 N.W.2d at 194.

### A.

The threshold question therefore is whether the Continental policy is ambiguous. Under Michigan law, "[a]n insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). In my view, the district court was correct to hold that the policy's language stating its compliance with the Joint Operating Agreement, coupled with the terms of that Agreement, makes the policy "capable of conflicting interpretations," and thus ambiguous, under Michigan law. The Common Areas Endorsement reads as follows:

12

LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT, CG 2144, IS HEREBY AMENDED FOR LIABILITY ARISING OUT OF THE EXTERIOR *COMMON AREA OWNED BY THE NAMED INSURED [Lord & Taylor]*, *IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT* AND/OR RECIPROCAL EASEMENT AGREEMENT IN EFFECT.

(emphasis added). There is no doubt that, as the majority suggests, the first part of the Common Area Endorsement suggests that coverage is limited only for liability "arising out of" the areas owned by Lord & Taylor. If that were the only clause in the Endorsement, I would likely agree with the majority that the policy is unambiguous. Importantly, however, the Endorsement goes further. In fact, the same sentence goes on to specify that the policy is amended "IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT." Because the Endorsement expressly claims to be in compliance with the Joint Operating Agreement, Michigan law permits the consideration of parol evidence, such as the terms of the Joint Operating Agreement in this case, to determine whether an ambiguity in the policy's terms exists. *See, e.g.*, *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997) (noting that parol evidence "may be admissible to prove the existence of an ambiguity and to clarify the meaning of an ambiguous contract") (citing *Goodwin,* 392 N.W.2d at 671).

In fact, the terms of the Joint Operating Agreement establish that such an ambiguity exists. Paragraph 12(C) expressly provides that

> [t]he parties hereto each agree that they will, jointly, commencing with the completion of the Common Areas on their respective Sites and at all times and continuously thereafter maintain general public liability insurance against claims on account of bodily injury or death and property damage *occurring upon, in, on, or about the Common Areas* (excluding Developer's buildings, including the Mall, and each of the other parties' buildings) . . . .

(emphasis added). Thus, the language of the Joint Operating Agreement contradicts the language provided in the Common Areas Endorsement by requiring insurance to be provided for common

13

areas owned by the developer Fairlane, including the parking lot where the Finley incident occurred. Therefore, because the language in the Continental policy is "capable of conflicting interpretations" as to whether the costs of the Finley settlement are covered, Michigan law requires a finding that the policy is ambiguous.

The next task in interpreting the Continental policy is to resolve the ambiguity discussed above. As this Court has noted, "[a] Court's primary responsibility in construing a Michigan contract is to ascertain and enforce the intent of the parties." *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortgage Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2004) (citing *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994), and *Zobczak v. Kotwicki*, 79 N.W.2d 471, 475 (Mich. 1956)). I am convinced that the district court was correct to conclude that the ambiguous insurance policy covers the parking lot where the Finley death occurred. The district court found that the parties intended the policy to comply with the terms of the Joint Operating Agreement for several reasons, including the Common Areas Endorsement's express statement that it was to comply with the terms of the Joint Operating Agreement. I can find nothing in the record suggesting that this finding was erroneous. Moreover, this Court is required by Michigan law to construe any ambiguity in favor the insured, Lord & Taylor. *See, e.g.*, *Hellebuyck v. Farm Bureau Gen. Ins. Co. of Mich.*, 685 N.W.2d 684, 686 (Mich. Ct. App. 2004). Thus, in my view, the parking lot where the Finley accident occurred was intended to be covered by the Continental policy.

B.

The majority's approach in concluding that the Continental policy is unambiguous is misguided for several reasons. First, the majority concludes that "[t]he Policy's reference to the Joint Operating Agreement alone does not make the Policy ambiguous." Maj. Op. at 5. If the

14

policy merely *referred* to the Agreement, as the majority suggests, perhaps I would consider their interpretation of the policy to be justified. However, the policy does more than just *refer* to the Joint Operating Agreement—it expressly provides that the policy is amended "IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT." In light of the terms of the Joint Operating Agreement, with which the policy is supposed to *comply*, the district court was correct to conclude that under Michigan law the policy is ambiguous.

Second, in holding that the language of the policy is unambiguous, the majority's interpretation of the policy essentially "reads out" of the policy the language specifying the policy's intended compliance with the Joint Operating Agreement. This approach violates the well-established rule under Michigan law that "courts must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 468 (Mich. 2003). The Michigan Supreme Court has stated very clearly that "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity." *Id.* at 467. Simply put, the majority's interpretation of the policy renders the "IN COMPLIANCE WITH THE JOINT OPERATING AGREEMENT" language nugatory, thus violating one of the most basic principles of Michigan contract law.

Perhaps recognizing this fact to be an unfortunate yet unmentionable consequence of their interpretation of the policy, the majority does not expressly claim, as Continental does in its brief, that the Joint Operating Agreement language is "meaningless surplusage." Continental argues that the language is "meaningless surplusage" and therefore does not create ambiguity justifying the district court's reference outside the four corners of the contract under Michigan law. In support

15

of this argument, Continental cites *Michigan Township Participating Plan v. Pavolich*, 591 N.W.2d 325, 331 (Mich. Ct. App. 1999), in which a Michigan Court of Appeals considered a "sloppily and inartfully drafted" insurance policy that expressly referred to a village as the insured party, but elsewhere referred to "you or any family member" in defining the insured parties. An employee of the village claimed that the "you or any family member" language indicated that the policy insured him as an employee of the village. *Id.* The court rejected the claim, holding that the "you or any family member" language was "mere surplusage" and did not create any ambiguity. *Id.*

Pavolich*, however, is clearly distinguishable from the present case because it involved what the court considered to be a "standard policy, which was not tailored to the needs of the village." *Id.* The case before this Court, however, presents an entirely different situation. The alleged "surplusage" in the present case is not "standard" contractual language that was mistakenly left in the policy. Rather, it is additional language specifically added for this particular client. The fact that this language is client-specific further underscores the extent of the majority's error in disregarding the language specifically stating the policy's intended compliance with the Joint Operating Agreement.

Third, Continental also argues, and the majority appears to agree, *see* Maj. Op. at 6, that the district court should not have considered the terms of the Joint Operating Agreement in finding that the policy was ambiguous because the Continental policy had an integration clause. The integration clause, contained in the Continental policy, provides: "This policy contains all the agreements between you and us concerning the insurance afforded." Continental claims that such a clause prevents a court from considering extrinsic evidence even where, such as here, such evidence is offered to show the existence of an ambiguity in the contract.

16

The fact that the policy contained an integration clause merely makes the parol evidence rule applicable in this case. *See, e.g.*, *Am. Anodco, Inc.*, 743 F.2d at 422 (noting that under Michigan law "before the parol evidence rule may be invoked there must be a finding that the parties intended the written instrument to be a complete expression of their agreement"). As established above, Michigan's parol evidence rule expressly allows the consideration of extrinsic evidence to prove the existence of an ambiguity or the intent of the parties as long as the proffered parol evidence is not inconsistent with the written contract terms. *See, e.g., Goodwin, Inc.*, 220 N.W.2d at 671; *see also Turner Const. Co. v. Robert Carter Corp.*, 162 F.3d 1162, 1998 WL 553009, at *6 (6th Cir. Aug. 17, 1998) (unpublished table opinion) (noting that even though the contract at issue contained an integration clause, the parol evidence rule in Michigan "nonetheless permit[ed] extrinsic evidence to demonstrate the *existence* of an ambiguity"). Neither Continental nor the majority cites any authority establishing that extrinsic evidence, such as the terms of the Joint Operating Agreement, is somehow inadmissible in this case merely because the policy contained an integration clause.

Finally, in support of its conclusion that the policy language is not rendered ambiguous by the terms of the Joint Operating Agreement, the majority concludes that "Continental policy's provision of coverage only for common areas owned by Lord & Taylor does not conflict with the Joint Operating Agreement's requirement that Lord & Taylor obtain insurance coverage for all common areas." That the policy and the Joint Operating Agreement can, in the majority's view, somehow be harmonized as "compatible," Maj. Op. at 6, does not answer the question before us. The issue here is whether the policy is "*capable* of conflicting interpretations," or "may reasonably be understood in different ways," *Nikkel*, 596 N.W.2d at 919 (emphasis added), and thus

17

ambiguous, not whether the policy can be purportedly reconciled with the terms of the Joint Operating Agreement. *See id.*; *accord Klapp*, 663 N.W.2d at 453. For the aforementioned reasons, I would conclude that under Michigan law the insurance policy here "is reasonably susceptible to more than one meaning." *Raska v. Farm Bureau Mutual Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982). Michigan courts have "no patience with attempts by a paid insurer to escape liability by taking advantage of an ambiguity, a hidden meaning, or a forced construction of the language in a policy, when all question might have been avoided by a more generous or plainer use of words." *Hooper v. State Mut. Life Assurance Co.*, 28 N.W.2d 331, 334 (Mich. 1947). Unfortunately, this is precisely what the majority allows the insurer to do in this case. Therefore, in my view, the district court was correct to find that the contract is ambiguous and, for the reasons stated above, to construe the ambiguity in favor of Lord & Taylor.

III.

Continental also argues on appeal that the policy only provides for indemnity for liabilities causally connected to the condition, ownership, maintenance, or use of the parking lot and therefore the district court erred in holding it liable in the Finley settlement. The Ownership Endorsement provides: "This insurance applies only to 'bodily injury' . . . arising out of . . . [t]he ownership, maintenance or use of the premises shown . . . ." Because the insured property was the "mere situs" of the injury, and did not cause the injury, Continental claims that it is not liable.

In light of the breadth of the language included in the Continental policy, I would conclude that the district court was correct to find that the liability in this case falls within the coverage of the Continental policy. As this Court has pointed out before in interpreting Michigan insurance law, "the term 'arising out of' is 'ordinarily understood to mean 'originating from[,]' 'having its

18

origin in,' 'growing out of' or flowing from' or in short, 'incident to or having a connection with.'" *Assurance Co. of Am. v. J.P. Structures, Inc.*, 132 F.3d 32, 1997 WL 764498, at *5 (6th Cir. Dec. 3, 1997) (unpublished table opinion) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951)); *accord Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 773 (E.D. Mich. 2000) (citing *Assurance Co.* and noting broad definition of "arising out of" in applying Michigan law). In my view, the law's broad interpretation of the phrase "arising out of" in the context of general liability insurance compels the conclusion that the Finley death arose out of "the ownership, maintenance or use of" the Fairlane parking lot. This interpretation also comports with the terms of the Joint Operating Agreement, with which the policy is clearly intended to comply, broadly requiring Lord & Taylor to obtain insurance for bodily injuries and death "occurring upon, in, on or about the Common Areas," such as the parking lot where the Finley incident occurred.

This reading of the policy is further supported by the fact that the Michigan Supreme Court has rejected an argument similar to that asserted by Continental. In *Frankenmuth Mutual Insurance Co. v. Piccard*, 489 N.W.2d 422, 424-25 (Mich. 1992), *abrogated on other grounds*, *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 839 n.8 (Mich. 1999), the court interpreted a similar commercial liability policy that limited coverage to those events "arising out of the ownership, maintenance or use of the insured premises." The insured, Charles Piccard, intentionally started a fire on his business premises, resulting in damage to his property. *Id.* at 424. The insurance company claimed that coverage was precluded by the terms of the policy because "arson [was] not attendant to the 'ownership, maintenance or use' of the insured's business." *Id.* at 425. The court expressly rejected that argument, noting that "the phrase 'ownership, maintenance or use' is used

19

by the insurer to define the subject matter and the nature of the risk assumed. In other words, the risk covered by the commercial liability insurance issued to Piccard was limited to those events that occurred on or at the premises of his business." *Id.* (footnote omitted). Thus, the court held that "the scope of the policy, and the risk that it covers, applie[d] to Piccard because the fire occurred at his business." *Id.* (citations omitted).

Applying the *Piccard* reasoning to this case further supports the conclusion that the Continental policy covers the costs associated with settling the Finley manner. Lord & Taylor, like Piccard, obtained a general premises liability policy to cover injuries "arising out of the ownership, maintenance or use of" the insured premises. Moreover, the Michigan Supreme Court seemingly interpreted that language not to require a direct casual relationship between the premises and the injury; rather, the court expressly held that such language covered the damage resulting from the fire set by the insured "because the fire occurred at [the insured's] business." Consequently, I can see no good legal reason why the similar language used by the Continental policy in the present case should be interpreted differently.

The primary case that Continental cites in support of its claim that a direct causal relationship is required under this policy is *Thornton v. Allstate Insurance Co.*, a case decided before *Piccard*, which involved a Michigan no-fault automobile insurance statute limiting coverage to injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." 391 N.W.2d 320, 322 (Mich. 1986) (quoting Mich. Comp. Laws § 500.3105(1)). In my view, *Thornton* does not control the question presented in the present case. First, *Thornton*'s applicability in this context is questionable because it involved the interpretation of a no-fault automobile insurance statute, not a premises liability policy. Automobile policies are certainly

20

intended to be less comprehensive than general premises liability insurance contracts such as the one in the present case.

Second, the *Thornton* court made very clear that its decision was premised on specific limiting language found in the no-fault statute that is noticeably absent here. The Michigan no-fault statute limited benefits to injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle*." *Id.* (quoting Mich. Comp. Laws § 500.3105(1)) (emphasis added). The court concluded that the language limiting benefits to those injuries resulting from the use of a motor vehicle "as a motor vehicle" "shows that the Legislature . . . chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.'" *Id.* Unlike the language in *Thornton*, the Continental policy at issue here contains no such limiting language. Instead, the Continental policy broadly provides for coverage "arising out of the ownership, maintenance or use of the premises." If Continental wanted to limit its liability to situations in which the injury is directly caused by the premises, it obviously could have done so. In this case, however, it did not.

Thus, for these reasons, I would conclude that the district court was correct in finding that the costs associated with the Finley dispute are within the broad terms of the Continental policy.

IV.

In sum, I would hold that the Continental policy is ambiguous because of the policy's express statement that it was amended to comply with the Joint Operating Agreement and because of the terms of that Agreement. In light of the evidence in this case, I would construe that ambiguity in favor of the insured Lord & Taylor and hold that the costs of the Finley settlement are covered under the Continental policy. I therefore respectfully dissent.

21